**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PATRICK E. BYRNE, THE PATRICK E. BYRNE REVOCABLE TRUST U/T/A DATED FEBRUARY 23, 2001, and THE PATRICK E. BYRNE IRREVOCABLE TRUST U/T/A DATED JULY 22, 2021,<br><br>Plaintiffs,<br><br>v.<br><br>AMERIS BANK,<br><br>Defendant. | Case No. 1:25-cv-1557-JLH |

**DEFENDANT AMERIS BANK'S OPENING BRIEF IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' COMPLAINT, OR IN THE ALTERNATIVE, TO STAY**

Smith, Katzenstein & Jenkins LLP
Elizabeth Wilburn Joyce (DE Bar #3666)
Megan Ix Brison (DE Bar #6721)
Lauren A. Black (DE Bar #7048)
1000 N. West Street, Suite 1501
Wilmington, Delaware 19801
(302) 652-8400
ewj@skjlaw.com
mib@skjlaw.com
lab@skjlaw.com

Dated: March 26, 2026

*Counsel for Defendant*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................................................iii

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ..................................... 1

SUMMARY OF THE ARGUMENT ..................................................................................... 2

STATEMENT OF FACTS .................................................................................................. 2

    The Stock Purchase Agreement ................................................................................. 2

    The Employment Agreement and the Long-Term Incentive Plan ..................................... 3

    Plaintiffs' Fraud Allegations ..................................................................................... 3

    Pending Litigation.................................................................................................... 4

ARGUMENT .................................................................................................................. 6

I.      Legal Standards.................................................................................................. 6

II.     Plaintiffs' Fraud Claims Accrued No Later Than December 10, 2021 and are Barred by the Statute of Limitations................................................................................. 7

III.    Even if not Time-Barred, the Complaint Fails to State Claims for Fraudulent Inducement and Equitable Fraud ......................................................................... 9

    A.    Fraudulent Inducement (Count I)............................................................... 9

        1.    Plaintiffs Fail to Identify Any Fraudulent Representation Made During the SPA Negotiation Process............................................... 10

        2.    Plaintiffs' Allegation that Ameris Never Intended to Comply with the LTIP is Insufficient to Establish a False Representation................................... 10

        3.    Plaintiffs Fail to Sufficiently Plead the Remaining Elements of Fraud.... 12

    B.    Equitable Fraud Claims (Counts II and III) ............................................... 13

    C.    Plaintiffs' Fraud Claims Are Barred by the Plain Language of the SPA .............. 15

    D.    Plaintiffs' Fraud Claims are Barred by Principles of Estoppel and Ratification........................................................................................... 15

    E.    Plaintiffs' Fraud Claims Sound in Contract and are Not Properly Before this Court ................................................................................................. 17

IV.    The Complaint Fails to State a Claim for Breach of Contract ......................................... 18

V.    If the Court Does Not Dismiss the Complaint, the Case Should be Stayed Pending the Outcome of the California Litigation ................................................................................. 19

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Diabetes Care, Inc. v. DexCom, Inc.*,
2006 WL 2375035 (D. Del. Aug. 16, 2006)...................................................................... 19

*Abry Partners V. L.P. v. F&W Acquisition LLC*,
891 A.2d 1032 (Del. Ch. 2006)............................................................................................ 8

*Accelerant Twister, LLC v. Marjo, LLC*,
2023 WL 4457422 (D. Del. July 11, 2023)................................................................... 9, 10

*AFN, Inc. v. Schlott, Inc.*,
798 F. Supp. 219 (D.N.J. 1992) ......................................................................................... 16

*Airborne Health, Inc. v. Squid Soap, LP*,
984 A.2d 126 (Del. Ch. 2009)............................................................................................ 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................. 6

*Baker v. MBNA Corp.*,
2007 WL 2009673 (D. Del. July 6, 2007)............................................................................ 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................. 6

*Black Horse Cap., LP v. Xstelos Holdings, Inc.*,
2014 WL 5025926 (Del. Ch. Sept. 30, 2014) .................................................................... 12

*Browne v. Robb*,
583 A.2d 949 (Del. 1990) .................................................................................................. 10

*Cato Cap. LLC v. Hemispherx Biopharma, Inc.*,
70 F. Supp. 3d 607 (D. Del. 2014),
*aff'd,* 625 F. App'x 108 (3d Cir. 2015)............................................................................. 10

*Cheffers v. Ideagen Software Inc.*,
2025 WL 2549411 (D. Del. Sept. 4, 2025) ........................................................................ 11

*Cornell Univ. v. Illumina, Inc.*,
2012 WL 1885129 (D. Del. May 23, 2012)......................................................................... 6

*DuBose v. Wyndham Vacation Resorts, Inc.*,
2021 WL 3145206 (D. Del. July 26, 2021)..................................................................... 7, 8

*Fifth Mkt., Inc. v. CME Grp. Inc*,
  2011 WL 12522192 (D. Del. May 20, 2011) ........................................................................ 19

*Great-W. Invs. LP v. Thomas H. Lee Partners, L.P.*,
  2011 WL 284992 (Del. Ch. Jan. 14, 2011) ........................................................................ 15

*In re Dex Media, Inc.*,
  595 B.R. 19 (D. Del. 2018) ................................................................................................ 16

*Iotex Commc'ns, Inc. v. Defries*,
  1998 WL 914265 (Del. Ch. Dec. 21, 1998) ...................................................................... 17

*Jakimas v. Hoffmann-La Roche, Inc.*,
  485 F.3d 770 (3d Cir. 2007) .............................................................................................. 16

*Kickflip, Inc. v. Facebook, Inc.*,
  999 F. Supp. 2d 677 (D. Del. 2013) .................................................................................... 1

*Kirchner v. Wyndham Vacation Resorts, Inc.*,
  580 F. Supp. 3d 57 (D. Del. 2022) ...................................................................................... 8

*Knight Broadband LLC v. Knight*,
  2022 WL 1788855 (Del. Super. Ct. June 2, 2022) ............................................................ 12

*Kolber v. Body Cent. Corp.*,
  967 F. Supp. 2d 1061 (D. Del. 2013) ................................................................................ 14

*Körber Supply Chain US, Inc. v. DOT Holdings Co.*,
  2025 WL 485957 (D. Del. Feb. 13, 2025) ........................................................................ 14

*Kostyszyn v. Martuscelli*,
  2014 WL 3510676 (Del. Ch. July 14, 2014) ..................................................................... 13

*Krahmer v. Christie's Inc.*,
  903 A.2d 773 (Del. Ch. 2006) ............................................................................................. 8

*MBIA Ins. Corp. v. Royal Indem. Co.*,
  221 F.R.D. 419 (D. Del. 2004) ............................................................................................ 6

*Monica v. Delta Data Software, Inc.*,
  2026 WL 370756 (Del. Super. Ct. Feb. 10, 2026) ........................................................... 11

*Narrowstep, Inc. v. Onstream Media Corp.*,
  2010 WL 5422405 (Del. Ch. Dec. 22, 2010) .................................................................... 17

*Organ v. Byron*,
  435 F. Supp. 2d 388 (D. Del. 2006) ................................................................................... 8

iv

*Perrigo Co. v. Int'l Vitamin Co.*,
    2019 WL 359991 (D. Del. Jan. 29, 2019)................................................................11

*Pinnavaia ex rel. Pinnavaia v. Celotex Asbestos Settlement Tr.*,
    271 F. Supp. 3d 705 (D. Del. 2017) ....................................................................... 6

*Pivotal Payments Direct Corp. v. Planet Payment, Inc.*,
    2015 WL 11120934 (Del. Super. Ct. Dec. 29, 2015) ........................................... 8

*RGC Int'l Invs., LDC v. Ari Network Servs., Inc.*,
    2004 WL 189784 (D. Del. Jan. 22, 2004)............................................................. 19

*Robinson v. Johnson*,
    313 F.3d 128 (3d Cir. 2002) .................................................................................. 7

*Sapp v. Indus. Action Servs., LLC*,
    2024 WL 3444633 (D. Del. July 17, 2024)............................................................11

*Sharma v. TriZetto Corp.*,
    2016 WL 1238709 (D. Del. Mar. 29, 2016)........................................................... 18

*Strassburger v. Earley*,
    752 A.2d 557 (Del. Ch. 2000)............................................................................... 13

*Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*,
    2010 WL 363845 (Del. Ch. Jan. 27, 2010) ........................................................... 8

*SZ DJI Tech. Co., Ltd. v. Autel Robotics USA LLC*,
    2019 WL 1244948 (D. Del. Mar. 18, 2019).......................................................... 19

*T. Gray Util. & Rehab Co., LLC v. Mack Operations, LLC*,
    2026 WL 84231 (Del. Ch. Jan. 12, 2026) .............................................................11

*vMedex, Inc. v. TDS Operating, Inc.*,
    2020 WL 4925512 (D. Del. Aug. 21, 2020).......................................................... 10

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
    860 A.2d 312 (Del. 2004) ...................................................................................... 9

*Zebroski v. Progressive Direct Ins. Co.*,
    2014 WL 2156984 (Del. Ch. Apr. 30, 2014) ........................................................ 14

**Statutes**

10 *Del. C.* § 8106(a)................................................................................................... 8

28 U.S.C. § 1446......................................................................................................... 18

**STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS**

In December 2025, Ameris Bank ("Ameris"), as Buyer, acquired all the outstanding shares of capital stock of Balboa Capital Corporation ("Balboa") from Patrick E. Byrne ("Byrne"), The Patrick E. Byrne Revocable Trust U/T/A Dated February 23, 2001, and The Patrick E. Byrne Irrevocable Trust U/T/A Dated July 22, 2021 (collectively, "Plaintiffs" or "Sellers") through a Stock Purchase Agreement (the "SPA").[1]  Complaint (hereinafter "Compl.") ¶21; SPA Art. II. Byrne was Balboa's founder and CEO and continued as CEO of Ameris's Balboa division after the acquisition. Compl. ¶1.  This Complaint is but one piece of ongoing bicoastal litigation between the parties related to their relationship.

In September 2024, Byrne filed suit against Ameris in the District Court for the District of California asserting various employment-related claims. CA No. 8:24-cv-01989-MWC-JDE (the "California Litigation").[2]  In May 2025, Ameris filed a complaint in the Delaware Superior Court against Byrne to recover over $1.5 million in losses covered by the indemnification provisions of the SPA.  CA No. N25C-05-071 KMM CCLD (the "Superior Court Litigation").[3]  That case was voluntarily dismissed and recently refiled in this Court. CA No. 1:26-cv-00190-JLH (the "Ameris Delaware Litigation").[4]  The instant litigation is nothing more than a reactive, tactical gambit by Byrne to attempt to avoid liability for Plaintiffs' indemnification obligations to Ameris.  In the

---

[1]  Exhibits are attached to the Declaration of Megan Ix Brison and cited herein as "Ex."  The SPA is attached as Exhibit 1.  The Court may consider documents not attached to the Complaint without converting the motion to dismiss to a motion for summary judgment because they are incorporated by reference to, and integral to, Plaintiffs' Complaint. *Kickflip, Inc. v. Facebook, Inc.,* 999 F. Supp. 2d 677, 682 (D. Del. 2013).
[2] A copy of the Complaint in the California Litigation is attached as Exhibit 2.
[3] A copy of the Complaint in the Superior Court Litigation is attached as Exhibit 7.
[4] A copy of the Complaint in the Ameris Delaware Litigation is attached as Exhibit 12.

California Litigation, Byrne seeks monetary damages related to the very same contracts he alleges in this case should be rescinded due to fraud.  Such procedural gamesmanship should be rejected.

Plaintiffs' Complaint asserts claims for Fraudulent Inducement (Count I); Reformation – Equitable Fraud (In the Alternative) (Count II); Reformation – Equitable Fraud (In the Alternative) (Count III); and Breach of Contract (Count IV).  D.I. 1.  Plaintiffs' fraud and reformation claims are untimely and fail to state a claim.  Plaintiffs' breach of contract claim similarly fails. Accordingly, Ameris moves to dismiss the Complaint in its entirety.  Alternatively, Ameris moves to stay the Complaint pending the outcome of the California Litigation.  Ameris submits this opening brief and accompanying request for judicial notice in support of its motion.

## SUMMARY OF THE ARGUMENT

I.  The Complaint is barred, in whole or in part, under Rule 12(b)(6) for failure to state claims.

II.  The fraud claims are barred under Rule 9 for failure to plead fraud with particularity.

III.  The fraud claims are untimely.

IV.  If the Court does not dismiss the Complaint, the case should be stayed.

## STATEMENT OF FACTS

Byrne was the founder, former majority shareholder, and former Chief Executive Officer of Balboa, a financial technology company.  Compl. ¶1.  Ameris Bank is a Georgia-chartered financial institution headquartered in Georgia. Compl. ¶11.

### *The Stock Purchase Agreement*

Plaintiffs/Sellers and Ameris entered into a SPA dated as of December 10, 2021 whereby Ameris purchased all the outstanding shares of capital stock of Balboa.  Compl. ¶21; SPA Art. II. Under the SPA, Sellers received substantial consideration for the purchase, including a cash purchase price for their shares of approximately $186 million.  SPA Art. II.  Following this, Balboa

continued to operate in California as a division of Ameris. Compl. ¶2. In connection with the transaction, Byrne entered into an employment agreement with Ameris (the "Employment Agreement") under which he agreed to serve as Chief Executive Officer of Balboa. *See* SPA Recitals.

### *The Employment Agreement and the Long-Term Incentive Plan*

The Employment Agreement referenced Ameris's establishment of a cash bonus long-term incentive program ("LTIP") in which Byrne and other employees might participate. Compl. ¶3. Pursuant to the LTIP and related form of LTIP Award Agreement, participating employees would be entitled to "Cash Bonus Awards" based on the achievement of certain "Performance Goals" related to a minimum threshold of annual earnings before tax ("EBT"). Compl. ¶17. The form of LTIP Award Agreement defined EBT as "Actual Earnings Before Tax" as identified in the Pioneer 1Q21 Operating Model which was attached to the LTIP, with certain adjustments and subject to certain assumptions. *Id.* ¶18. Participating employees could be eligible for awards for calendar years 2022-2024. *Id.* ¶17.

### *Plaintiffs' Fraud Allegations*

Plaintiffs allege that Ameris fraudulently represented that it would comply with the terms of the LTIP, and this alleged misrepresentation induced Plaintiffs to enter the SPA and to agree to the indemnification provisions found in Section 8 of the SPA. Section 8 of the SPA provides for certain indemnification rights for all parties (the "Indemnification Provisions"). Plaintiffs specifically agreed to indemnify Ameris with respect to several lawsuits that Balboa was engaged in at the time of the SPA.[5] Byrne later confirmed via email, as costs continued to mount, that he

---

[5] As detailed in the SPA, prior to the acquisition by Ameris, Balboa was engaged in several related lawsuits that continued post-acquisition, including but not limited to *Dr. Jaideep Patel v. Scott Postle*, *Balboa Corporation, et al.*, and *Samuel Feng, M.D. v. America's MHT, Inc., et al.*

"agree[d] to reimburse Ameris for the MHT legal invoices" per his contractual obligation in the SPA.[6] Ex. 10 at ¶14, Ex. 3.

According to Plaintiffs, after closing, Ameris applied different financial accounting methodologies instead of calculations allegedly included in the Pioneer 1Q21 Operating Model, and breached the LTIP. Compl. ¶¶23-24. Based on these allegations, Plaintiffs assert in conclusory fashion that Ameris actually never intended to perform under the LTIP and fraudulently represented "by executing the LTIP and during the negotiation process with Byrne" it would comply with the terms of the LTIP in order to induce Plaintiffs to enter into the SPA and the Indemnification Provisions. Compl. ¶¶19-20, 22-26.

Plaintiffs seek a variety of relief, including rescission or partial rescission of the SPA, rescissory damages, or reformation of the SPA to void only Section 8 therein, and monetary damages associated with an alleged breach of the SPA's forum selection clause.

### *Pending Litigation*

The other litigation among the parties provides additional context for Plaintiffs' claims. In the California Litigation, Byrne asserts claims for (1) Wrongful Termination in Violation of Public Policy; (2) Retaliation in Violation of Labor Code 1102.5; (3) Failure to Pay All Wages Due at Termination; and (4) Violation of Business & Professions Code 17200. CA No. 8:24-cv-01989-MWC-JDE. *See* Ex. 2. Among other things, the California Complaint alleges that Ameris intentionally miscalculated Balboa's earnings and performance so as to reduce or eliminate LTIP awards. Ex. 2 ¶10. Byrne seeks to recover amounts allegedly owed to him under the LTIP. *Id.*

---

(collectively, with any appeals of either of the foregoing or other actions substantially related to the facts and circumstances of the foregoing, the "MHT Litigation"). *See* SPA §8.2(f).

[6] Since this is a motion to dismiss, Ameris does not offer Byrne's email for its truth, but rather to provide context to the disputes between the parties and Byrne's prior statements regarding obligations under the indemnification provisions.

¶13.  Thus, whether Ameris complied with the LTIP and Byrne's potential earnings thereunder are directly at issue in the California Litigation.  The case is scheduled for trial beginning June 1, 2026.  In December 2025, Byrne sought to amend his complaint in the California Litigation to expressly include a claim for breach of the LTIP, which the Court denied as untimely.  *See* Ex. 4 at 11-13; Ex. 5 at 6-8; Ex. 6 at 3-4.  Less than three weeks later, Byrne filed the instant lawsuit in this Court.

On May 7, 2025, Ameris filed the Superior Court Litigation asserting claims against Plaintiffs for enforcement of the Indemnification Provisions, seeking over $1.5 million in damages as a result of the MHT Litigation.[7]  Plaintiffs refused to accept service of the Complaint in that action and were served by registered mail.  Ex. 10 at ¶¶1-5.  Plaintiffs did not respond to that Complaint and default judgment was entered against them.  Ex. 8.  Plaintiffs subsequently moved to vacate the default judgment, a motion that was granted, and then moved to dismiss the Superior Court Litigation based on improper venue.  Exs. 9, 11.  Ameris voluntarily dismissed the case and filed the Ameris Delaware Litigation in this Court, which is now pending.[8]

Byrne has been litigating LTIP related issues in the California Litigation for nearly two years, and has been complaining about the LTIP calculations since at least 2023.  Compl.  ¶25.  Only now for the first time – in the face of a nearly $2 million indemnification claim – does Byrne allege that Ameris fraudulently induced him to execute the SPA, including its Indemnification Provisions.  Neither the SPA nor the Indemnification Provisions have any relation to or bearing on the LTIP, tellingly the SPA does not mention or reference the LTIP in any way (nor does the LTIP mention or reference the SPA), and the Complaint does not allege any facts to support Plaintiffs' fraud theories.  Accordingly, Plaintiffs' threadbare attempt to repurpose Byrne's LTIP disputes to

---

[7] C.A. No. N25C-05-071 KMM CCLD; Ex. 7.
[8] C.A. No. 1:26-cv-00190-JLH; Ex. 12.

avoid liability under the Indemnification Provisions should be rejected and the Complaint should be dismissed in its entirety.

## ARGUMENT

### I.     Legal Standards

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. *Pinnavaia ex rel. Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017). However, a claim can survive a Rule 12(b)(6) motion only if plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face". *Cornell Univ. v. Illumina, Inc.*, 2012 WL 1885129, at \*2 (D. Del. May 23, 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  If a plaintiff fails to provide the grounds of his entitlement to relief beyond merely labels, conclusions, and bald assertions, then the complaint must be dismissed. *See Cornell Univ.*, 2012 WL 1885129, at \*2 (citing *Twombly*, 550 U.S. at 555).

"[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 555–57).  Further, "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64. A complaint must "nudge [] claims . . . across the line from conceivable to plausible." *Id.* at 680.

"Rule 9(b) requires a party alleging fraud or mistake to plead with particularity the circumstances constituting his or her claims. The intent behind Rule 9(b) is to give defendants notice of the claims against them and to reduce the number of frivolous actions." *MBIA Ins. Corp. v. Royal Indem. Co.*, 221 F.R.D. 419, 420–21 (D. Del. 2004) (citations and quotations omitted). "The Third Circuit has noted that [a]lthough Rule 9(b) falls short of requiring every material detail

6

of the fraud such as date, location, and time, plaintiffs must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Baker v. MBNA Corp.*, 2007 WL 2009673, at *3 (D. Del. July 6, 2007) (internal quotations and citations omitted). With these standards in mind, the Complaint must be dismissed.

## II.    Plaintiffs' Fraud Claims Accrued No Later Than December 10, 2021 and are Barred by the Statute of Limitations

Plaintiffs assert three (3) claims sounding in fraud: **Count I** asserts fraudulent inducement of the SPA and seeks rescission or partial rescission of the SPA, or alternatively rescissory damages.  Compl. ¶¶ 31-41.  **Count II**, alleged alternatively, asserts equitable fraud, contending that during the negotiation of the SPA, "Ameris fraudulently, or with reckless indifference to the truth, misrepresented and/or omitted material facts concerning its intention to comply with the LTIP" and seeks "reformation of the SPA to void Section 8 therein" – the Indemnification Provisions.  Compl. ¶¶ 42 -52.  **Count III**, averred alternatively, also asserts equitable fraud, alleging that during the negotiation of the SPA, "Ameris negligently represented and/or omitted material facts concerning its intention to comply with the LTIP" and seeks "reformation of the SPA to void Section 8 therein" – the Indemnification Provisions.  Compl. ¶¶ 53-63.

"[T]he so-called 'Third Circuit Rule' ... permits a limitations defense to be raised by a motion under Rule 12(b)(6), ... if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *DuBose v. Wyndham Vacation Resorts, Inc.*, 2021 WL 3145206, at *2 (D. Del. July 26, 2021) (cleaned up) (granting motion to dismiss fraud claims as untimely under 3-year limitations period) (citing *Robinson v. Johnson*, 313 F.3d 128, 135–36 (3d Cir. 2002) (citations omitted)).  "The Delaware statute of limitations for claims that sound in fraud is three years." *Kirchner v. Wyndham Vacation Resorts, Inc.*, 580 F.

7

Supp. 3d 57, 63 (D. Del. 2022) (citing 10 *Del. C.*§ 8106(a)).[9]  As such, Plaintiffs' fraud claims are all untimely.

Regardless of whether they are based on alleged intentional, reckless or negligent misrepresentations, Plaintiffs' fraud claims accrued at the time the alleged misrepresentations were made, i.e. during the negotiations of the SPA.  Compl. ¶¶ 33, 43, 54 (predicating fraud claims on time period "[d]uring the parties' negotiation of the SPA").  "A claim for fraudulent inducement accrues when the [alleged] fraudulent statements were made, which must be on or before the date when the parties entered into the contract."  *DuBose*, 2021 WL 3145206, at *3 (citing *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2015 WL 11120934, at *4 (Del. Super. Ct. Dec. 29, 2015) (citations omitted)).  Claims for equitable fraud or negligent misrepresentation similarly accrue "at the moment of the wrongful act and not when the effects of the act are felt."  *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 363845, at *6 (Del. Ch. Jan. 27, 2010) (claims "arising from a promise" including equitable fraud, based on negotiations of pertinent agreement, "accrued, at the latest, … when the 2004 Agreement was executed") (citation omitted); *see Krahmer v. Christie's Inc.*, 903 A.2d 773, 778 (Del. Ch. 2006) ("the applicable statute of

---

[9] The parties to the SPA agreed to a robust governing law clause that applies Delaware law to "all matters relating" to the SPA, as well as "all claims or causes of action arising hereunder".  Section 10.7 of the SPA explicitly provides that Delaware law applies, expressly "including its statute of limitations".  This Court has recognized that such broad choice of law provisions "can govern claims in tort … on the grounds that false contractual representations were made."  *See Organ v. Byron*, 435 F. Supp. 2d 388, 391 (D. Del. 2006) (citing *Abry Partners V. L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1047 (Del. Ch. 2006)).  Then-Vice Chancellor Strine held that it was "not sensible" to apply the Delaware choice of law provision to contractual claims "but not claims in tort seeking rescission of the Stock Purchase Agreement on grounds that false contractual representations were made."  *Abry*, 891 A.2d at 1047. The same is true here.  Delaware law should apply to all of Plaintiffs' claims.

8

limitations is 10 *Del. C.* § 8106, which imposes a three-year period for claims of negligent misrepresentation and equitable fraud").[10]

The Complaint alleges that Sellers and Balboa entered into the SPA with Ameris on December 10, 2021 (Compl. ¶2) (the "Closing Date"), and that "[d]uring the parties' negotiation of the SPA," Ameris allegedly made false representations.  Compl. ¶¶ 33-34, 43-45, 54-56.  Thus, the fraud claims had to accrue on or before, and not later than, the Closing Date.  Plaintiffs' fraud claims therefore had to be brought no later than December 10, 2024, which they were not.  Counts I-III should be dismissed with prejudice.

### III.    Even if not Time-Barred, the Complaint Fails to State Claims for Fraudulent Inducement and Equitable Fraud

#### A.    Fraudulent Inducement (Count I)

Plaintiffs' claim for fraudulent inducement must be dismissed because Plaintiffs fail to sufficiently allege all elements of the claim and it is not pled with the required particularity pursuant to Rule 9(b).  To state a claim for fraudulent inducement under Delaware law, a plaintiff must satisfy all the elements of common-law fraud:

> (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.

*Accelerant Twister, LLC v. Marjo, LLC*, 2023 WL 4457422, at *4 (D. Del. July 11, 2023).  The Complaint must identify the "who, what, when, where and how of the events at issue. . . . and cannot simply allege boilerplate and conclusory allegations[.]". *Id.* at *5. It must "specify the

---

[10]  *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) ("This Court has repeatedly held that a cause of action 'accrues' under Section 8106 at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action.").

statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* (internal quotations and citations omitted).

>    1.   *Plaintiffs Fail to Identify Any Fraudulent Representation Made During the SPA Negotiation Process*

The specifics of Plaintiffs' fraud allegations amount to one generalized and repeated allegation: "During the parties' negotiation of the SPA, Ameris represented, by executing the LTIP and in conversations with Byrne regarding the same, that it would honor and comply with the LTIP's terms."  Compl. ¶¶24, 32-33, 43-44, 54-55.  Plaintiffs cannot seriously contend that these allegations identify the who, what, when, or where of the alleged "representations" Ameris made to Byrne "during the negotiation process".  The allegations are devoid of any detail, are merely conclusory, and are entirely insufficient to meet the requirements of Rule 9.  *See, e.g.*, *Browne v. Robb*, 583 A.2d 949, 955-56 (Del. 1990) (dismissing fraud claim that lacked any specific facts to support claim).

>    2.   *Plaintiffs' Allegation that Ameris Never Intended to Comply with the LTIP is Insufficient to Establish a False Representation*

To the extent Plaintiffs rely upon execution of the LTIP to establish a fraud claim, this also fails.  Under Delaware law, "[t]he failure to fulfill a promise to perform future acts is not ground for a fraud action unless there existed an intent not to perform *at the time the promise was made.*" *Cato Cap. LLC v. Hemispherx Biopharma, Inc.*, 70 F. Supp. 3d 607, 627 (D. Del. 2014), *aff'd,* 625 F. App'x 108 (3d Cir. 2015) (quotations and citations omitted) (emphasis added).  "A plaintiff cannot make out a fraudulent inducement claim simply by showing that the defendants breached a promise to perform and alleging that the defendant never intended to perform at the time of its promise." *vMedex, Inc. v. TDS Operating, Inc.*, 2020 WL 4925512, at *11 (D. Del. Aug. 21, 2020).

To overcome this, "the Complaint [must] allege[] particularized facts that allow the Court to infer that, at the time the promise was made, the speaker had no intention of keeping it." *Sapp v. Indus. Action Servs., LLC*, 2024 WL 3444633, at *4 (D. Del. July 17, 2024). In this case, it does not, and Plaintiffs' claim should be dismissed. *See, e.g.*, *T. Gray Util. & Rehab Co., LLC v. Mack Operations, LLC*, 2026 WL 84231, at *2 (Del. Ch. Jan. 12, 2026) (noting fraudulent inducement claim was dismissed for failure to "plead particularized facts showing the defendants had no intention of performing the contractual promise at issue" at the time the contract was signed). *Monica v. Delta Data Software, Inc.*, 2026 WL 370756, at *10 (Del. Super. Ct. Feb. 10, 2026) (dismissing fraud claim where plaintiff failed to allege "specific facts that the speakers had no intention of honoring that promise at the time they made it.").

*Cheffers v. Ideagen Software Inc.* is instructive. 2025 WL 2549411, at *7–8 (D. Del. Sept. 4, 2025). There, the parties' dispute included a fraudulent inducement claim related to the terms of a post-merger earnout provision. The plaintiff's fraud claims were dismissed because the allegations were solely based on the intent not to perform obligations imposed by the agreement. Like here, the allegations were that the misrepresentation occurred "during the negotiation . . . and in the [] [m]erger [a]greement." The Court deemed those allegations "terminal" to plaintiff's claim. The same result is warranted here. Plaintiffs allege that Ameris made misrepresentations by executing an agreement. *See also Perrigo Co. v. Int'l Vitamin Co.*, 2019 WL 359991, at *2 (D. Del. Jan. 29, 2019) ("[A] tort claim cannot be based solely on a violation of a contractual duty."). To the extent there are any allegations to support an intent not to perform on Ameris's part, those allegations are that Ameris's intent not to perform is demonstrated by its alleged breach of the LTIP (an allegation Byrne sought to pursue in the California Litigation and was denied) – which occurred after the LTIP and SPA were entered into. Compl. ¶24. These allegations cannot form

11

the basis for a fraudulent inducement claim. *See Knight Broadband LLC v. Knight*, 2022 WL 1788855, at *11 (Del. Super. Ct. June 2, 2022) (dismissing fraudulent inducement claim that failed to "sufficiently plead contemporaneous facts supporting an inference that [Defendants] knew their statements were false when made or lacked a good faith belief in their truth" and instead "cite[d] to events arising after the statements were made.").

          3.       *Plaintiffs Fail to Sufficiently Plead the Remaining Elements of Fraud*

With respect to the second and third required elements of a fraud claim, Plaintiffs' allegations that Ameris knew it did not intend to comply with the LTIP at the time the SPA was executed are conclusory and contradicted by the parties' actions. Compl. ¶¶22-24. Plaintiffs admit that Byrne, together with dozens of other participating employees, received, and accepted payment pursuant to the LTIP, demonstrating that Ameris did intend to comply. *Id.* ¶23. Indeed, Ameris is currently defending the California Litigation on the very basis that Ameris did, in fact, comply with the LTIP. Ex. 3.

Plaintiffs also fail to sufficiently allege the fourth element of fraud, justifiable reliance. That is because Byrne's alleged reliance on any representations pertaining to the LTIP "during negotiations" of the SPA is not reasonable. The SPA, mutually drafted by sophisticated counsel for both parties, contains an integration clause making clear that the SPA "supersede[s] all prior written agreements and all prior or contemporaneous oral agreements with respect to the subject matter hereof." SPA §§10.5; 10.16(g). "Entertaining a claim that so plainly conflicts with the [contracts] would render the integration clauses contained in them mere surplusage—a result that our canons of contractual interpretation strongly discourage." *See, e.g.*, *Black Horse Cap., LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926, at *25 (Del. Ch. Sept. 30, 2014). Plaintiffs have also failed to plead any facts demonstrating a reasonable relationship between the LTIP and the

Indemnification Provisions.  The SPA does not mention the LTIP in any way, such as a condition or other requirement of closing, does not incorporate it, and does not even include it as an exhibit. *See* SPA §10.14.  Plaintiffs' claim that they relied on representations about the LTIP to enter the SPA, and specifically the Indemnification Provisions, is not reasonable.

Finally, Plaintiffs fail to sufficiently plead damages resulting from any alleged reliance. Plaintiffs' alleged damages and the relief they seek – unwinding the SPA or eliminating the SPA's Indemnification Provisions -- have no relation to reliance on performance of the LTIP, a wholly separate agreement related to potential incentive compensation for Byrne and other employees that is not even mentioned in the SPA.  Rescission or partial rescission also requires that Plaintiffs allege "that they are ready, willing and able to return defendants to the *status quo ante.*" *Kostyszyn v. Martuscelli*, 2014 WL 3510676, at *5 (Del. Ch. July 14, 2014); *see also Strassburger v. Earley*, 752 A.2d 557, 578 (Del. Ch. 2000), *as revised* (Jan. 27, 2000).  Plaintiffs do not allege anywhere that they are prepared to return the significant purchase price *of approximately $186 million* they received under the SPA or any of the benefits received pursuant to Byrne's Employment Agreement or the LTIP.   Plaintiffs' fraudulent inducement claim should be dismissed.

### B.      Equitable Fraud Claims (Counts II and III)

The only material difference between Counts II and III is that in Count II, Plaintiffs assert that Ameris acted "fraudulently, or with reckless indifference to the truth, misrepresented and/or omitted material facts concerning its intention to comply with the LTIP" (Compl. ¶43), while in Count III, Plaintiffs assert that Ameris "negligently misrepresented and/or omitted material facts concerning its intention to comply with the LTIP" (Compl. ¶54).  *Compare* Compl. ¶50 (asserting for purposes of Count II harm due to Ameris's "fraudulent inducement") *with* Compl. ¶61 (asserting for purposes of Count III harm due to Ameris's "negligent inducement").

13

"Equitable fraud requires similar elements to common law fraud, except that a 'claimant need not show that the respondent acted knowingly or recklessly—innocent or negligent misrepresentations or omissions suffice.'" *Körber Supply Chain US, Inc. v. DOT Holdings Co.*, 2025 WL 485957, at *5 (D. Del. Feb. 13, 2025) (granting motion to dismiss) (citing *Zebroski v. Progressive Direct Ins. Co.*, 2014 WL 2156984, at *7 (Del. Ch. Apr. 30, 2014)). "A plaintiff claiming equitable fraud, however, 'must sufficiently plead a special relationship between the parties or other special equities, such as some form of fiduciary relationship or other similar circumstances." *Kolber v. Body Cent. Corp.*, 967 F. Supp. 2d 1061, 1068 (D. Del. 2013) (citing *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 144 (Del. Ch. 2009)) (dismissing equitable fraud claim). Plaintiffs make no attempt to plead any kind of special relationship between Byrne and Ameris.

Furthermore, in the Superior Court Litigation, Byrne acknowledged the SPA could not have been procured by fraud because the SPA was drafted by sophisticated parties through arms-length negotiations. *See* Ex. 11 at 2, 10. The equitable fraud claims should be dismissed on this basis alone. For the same reasons discussed above, Plaintiffs do not plead actionable misrepresentations or justifiable reliance, and the equitable fraud claims should be dismissed.

Should the Court reach Plaintiffs' request for equitable remedies, its reformation claims on the basis of equitable fraud should still be rejected. Reformation isn't necessary. Plaintiffs' fraud claims are solely designed to avoid liability on Ameris's affirmative indemnification claims, by seeking to void only Section 8 of the SPA, which has no relation to the parties' understanding of the LTIP, all while continuing to litigate in California to *enforce* the very same LTIP. It is not the role of the Court to reform a contract negotiated between sophisticated parties because one party

14

now regrets the deal. *Great-W. Invs. LP v. Thomas H. Lee Partners, L.P.*, 2011 WL 284992, at *8 (Del. Ch. Jan. 14, 2011). Plaintiffs' equitable fraud claims should be dismissed.

### C.     Plaintiffs' Fraud Claims Are Barred by the Plain Language of the SPA

Plaintiffs allege that the LTIP was a critical condition to Sellers' agreement to the Indemnification Provisions in the SPA. Compl. ¶5. Yet, the SPA does not identify the LTIP at all, let alone as a material inducement or condition of closing. One would expect that if the LTIP were so fundamental to Byrne and his determination to enter into the SPA, that this would have been reflected, at the very least, by specific identification of the LTIP in the SPA. It is not. Indeed, Sellers knew how to identify material inducements; they clearly identified the Employment Agreement and also, among other things, spelled out the payment of transaction bonuses in satisfaction of certain outstanding stock options as conditions and inducement to executing the SPA. *See* SPA, Recitals. They did not identify the LTIP at all. Plaintiffs allege no facts supporting a causal relationship between Ameris creating the LTIP and Plaintiffs agreeing to the Indemnification Provisions regarding the MHT Litigation or otherwise. Plaintiffs only wish now there was such a connection. As a result, Plaintiffs fail to allege any basis for rescission, partial rescission, rescissory damages, or any other relief regarding the SPA and Indemnification Provisions. The fraud claims should be dismissed.

### D.     Plaintiffs' Fraud Claims are Barred by Principles of Estoppel and Ratification

Plaintiffs affirmatively assert that the SPA and LTIP are valid contracts in other litigation when it supports their purposes. Now they come to this Court to argue the SPA is not, in fact, a valid contract. "The basic principle of judicial estoppel, ... is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *In re Dex Media, Inc.*, 595 B.R. 19,

36 (D. Del. 2018).  A Court may apply the doctrine in a situation where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice."  *AFN, Inc. v. Schlott, Inc.*, 798 F. Supp. 219, 224 (D.N.J. 1992).

In the Superior Court Litigation, Plaintiffs asserted that the SPA is a valid and enforceable contract for purposes of seeking to enforce a venue provision.  Ex. 11 at 2, 9-10.  Byrne's California Litigation seeks damages based on a valid and enforceable LTIP.  *See, e.g.*, Ex. 2 at ¶¶8-9, 11, 15a, 25, 34 (alleging that Ameris withheld payments under the LTIP and fraudulently changed the calculation methodology and claiming entitlement to unpaid bonuses pursuant to his Employment Agreement and LTIP).  Plaintiffs have even explicitly taken the position that certain provisions of the SPA *could not have been procured by fraud* because the SPA was drafted by sophisticated parties negotiating at arms-length.  *See* Ex. 11 at 10 ("The SPA was drafted by sophisticated parties negotiating at arms-length.  [Ameris] cannot credibly challenge either the propriety of the SPA or Section 10.8 specifically."); *id*. at 2 ("Plaintiff likewise cannot establish that Section 10.8 was procured by fraud: the SPA was drafted by sophisticated parties negotiating at arms-length[.]").

Here, Plaintiffs' Complaint is premised on a theory that the SPA is *not* a valid, enforceable contract, but that Plaintiffs were fraudulently induced to enter the SPA based on alleged misrepresentations regarding the LTIP.  However, since the SPA was executed, Byrne has (1) accepted LTIP payments and (2) expressly ratified his obligations pursuant to the Indemnification Provisions.  *See* Compl. ¶23; Ex. 10 at ¶14, Ex. 3; *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 782 (3d Cir. 2007), *as amended* (May 31, 2007) (denying claim and noting "[t]he theory of ratification is that a promise can be enforced even though the underlying contract is voidable if it is ratified by the promisor.")

16

Plaintiffs' attempt to avoid liability under the Indemnification Provisions by filing this action should be rejected and Plaintiffs should be estopped from arguing that they were fraudulently induced into entering the SPA when they have previously taken the position that the SPA and LTIP are enforceable, have accepted benefits from the LTIP, have ratified the Indemnification Provisions, and are seeking damages in the California Litigation based on those contracts.

### E.    Plaintiffs' Fraud Claims Sound in Contract and are Not Properly Before this Court

At bottom, Plaintiffs' fraud-based claims are a repackaged breach of contract claim. Plaintiffs allege that Ameris "immediately breached" the LTIP (Compl. ¶¶23, 29), that since 2023 Byrne "complained repeatedly to Ameris that it was miscalculating" and violating the LTIP (Compl. ¶25), and only now, several years later, allege a fraud claim in the face of liability pursuant to the Indemnification Provisions. "Delaware law holds that a plaintiff cannot bootstrap a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations." *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at \*15 (Del. Ch. Dec. 22, 2010) (quoting *Iotex Commc'ns, Inc. v. Defries*, 1998 WL 914265, at \*4 (Del. Ch. Dec. 21, 1998)) (cleaned up). Taken at face value, Plaintiffs' Complaint is about Ameris's treatment of the LTIP *after* closing, specifically that Ameris breached the LTIP in the way it calculated benefits.

The California Court has already foreclosed Byrne's attempt at an LTIP breach of contract claim. Ex. 6. While bootstrapping is not directly applicable here in the absence of a breach of contract claim, the same principles should apply. Plaintiffs should not be permitted to disguise a breach of contract claim and circumvent the California Court's ruling by simply stating in this Court without any alleged support that Ameris never intended to perform its LTIP obligations.

17

#### IV.    The Complaint Fails to State a Claim for Breach of Contract

Plaintiffs allege that Ameris breached Section 10.8 of the SPA by initiating the now-dismissed Superior Court Litigation and they seek monetary damages for costs and expenses incurred by Sellers in connection with the Superior Court Litigation.[11]  Compl. ¶¶64-69.  Plaintiffs fail to state a claim under the plain language of the SPA.  Section 10.8 of the SPA provides, *inter alia*, that the parties agree to commence any action *either* in the United States District Court for the District of Delaware or the Delaware Court of Chancery in the State of Delaware.  SPA §10.8.  However, Section 8.4(c), found within the SPA's Indemnification Provisions, permits the filing of a complaint in Superior Court.  It provides that "[e]ach party to this Agreement agrees that the state and federal courts located in the State of Delaware (the "Delaware Courts") shall have exclusive jurisdiction to hear and determine any Action, and to settle any disputes, which may arise out of or in connection with this Agreement and, for such purposes, consents to submit itself to the personal jurisdiction of such courts."  SPA §8.4(c).  Accordingly, the Complaint fails to allege breach.  *See, e.g.*, *Sharma v. TriZetto Corp.*, 2016 WL 1238709, at *3 (D. Del. Mar. 29, 2016) (dismissing breach of contract claims where contract did not impose the requirement that Plaintiff alleged was breached).

Even if Plaintiffs successfully stated a claim for breach of contract, the Superior Court Litigation has been dismissed and Plaintiffs' claim is moot.  Additionally, any claimed damages are self-inflicted as a result of Byrne's own actions in failing to timely respond to the Complaint or remove it to federal court.  Pursuant to 28 U.S.C. § 1446, Plaintiffs had 30 days from service to file a notice of removal.  Despite being aware of the lawsuit, Plaintiffs refused to accept service,

---

[11] Notably, Plaintiffs do not allege any breach of contract of the SPA related to the LTIP, presumably because there is nothing in the SPA that relates to, or imposes contractual obligations, on Ameris with respect to the LTIP in any way.

18

and then, once served, failed to respond to the Complaint at all.  *See* Exs. 8 and 10.  "Generally, enforcement of a forum selection clause results in a transfer, dismissal or a retention of jurisdiction."  *RGC Int'l Invs., LDC v. Ari Network Servs., Inc.*, 2004 WL 189784, at *5 (D. Del. Jan. 22, 2004).  In *RGC*, the Court dismissed a claim for breach of a forum selection clause because plaintiff obtained enforcement of its rights under the forum selection clause.  *Id.*  The same result is warranted here.  Plaintiffs have already obtained the forum relief they sought.  The breach of contract claim should be dismissed, as moot.

**V.      If the Court Does Not Dismiss the Complaint, the Case Should be Stayed Pending the Outcome of the California Litigation**

This court has broad discretionary power to stay proceedings.  *Fifth Mkt., Inc. v. CME Grp. Inc*, 2011 WL 12522192, at *2 n.3 (D. Del. May 20, 2011).  "In determining whether to grant a discretionary stay, a court typically considers: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage."  *SZ DJI Tech. Co., Ltd. v. Autel Robotics USA LLC*, 2019 WL 1244948, at *1 (D. Del. Mar. 18, 2019).

The California Litigation involves the determination of certain LTIP issues, including whether Ameris improperly calculated earnings and payouts under the LTIP.  Any ruling on these issues, including compliance with the LTIP, would impact and inform the claims at issue in this case. The California Litigation is scheduled for trial from June 1-June 3, 2026.  Here, a stay "will conserve the resources of the parties and the court, thereby promoting efficiency" and avoid "the risk of inconsistent rulings".  *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, 2006 WL 2375035, at *6 (D. Del. Aug. 16, 2006).  Accordingly, if the Court does not dismiss the Complaint in its entirety,

19

Defendant requests that this matter be stayed pending the final outcome of the California Litigation.

## CONCLUSION

For the foregoing reasons, Defendant Ameris Bank respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.  Alternatively, Ameris Bank requests that the Court stay this action pending the outcome of the California Litigation.


Dated: March 26, 2026

Smith, Katzenstein & Jenkins LLP

  */s/   Megan Ix Brison*
Elizabeth Wilburn Joyce (DE Bar #3666)
Megan Ix Brison (DE Bar #6721)
Lauren A. Black (DE Bar #7048)
1000 N. West Street, Suite 1501
Wilmington, Delaware  19801
(302) 652-8400
ewj@skjlaw.com
mib@skjlaw.com
lab@skjlaw.com

*Counsel for Defendant*

20