# Exhibit 10

**EFiled:  Nov 26 2025 03:30PM EST**
**Transaction ID 77877014**
**Case No. N25C-05-071 KMM CCLD**

# IN THE SUPERIOR COURT
# OF THE STATE OF DELAWARE

| | |
|---|---|
| AMERIS BANK, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) C.A. No. N25-C-05-071 KMM CCLD |
| | ) |
| v. | ) |
| | ) |
| PATRICK E. BYRNE, THE | ) |
| PATRICK E. BYRNE REVOCABLE | ) |
| TRUST U/T/A DATED FEBRUARY | ) |
| 23, 2001, and THE PATRICK E. | ) |
| BYRNE IRREVOCABLE TRUST | ) |
| U/T/A DATED JULY 22, 2021, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

## OPPOSITION TO DEFENDANTS' MOTION TO VACATE
## DEFAULT JUDGMENT

Dated:  November 26, 2025

PINCKNEY, WEIDINGER, URBAN
 & JOYCE LLC
Patricia R. Urban (DE Bar #4011)
Elizabeth Wilburn Joyce (DE Bar #3666)
Megan Ix Brison (DE Bar #6721)
2 Mill Road, Suite 204
Wilmington, DE  19806
Phone: 302-504-1497
Email: purban@pwujlaw.com
        ewilburnjoyce@pwujlaw.com
        mixbrison@pwujlaw.com

EFiled:  Nov 26 2025 03:30PM EST
Transaction ID 77877014
Case No. N25C-05-071 KMM CCLD

Plaintiff Ameris Bank hereby opposes Defendants' Motion to Vacate Default Judgment ("Mot."), and in support thereof, states the following:

## BACKGROUND

1.      Defendants admit that on May 1, 2025, Plaintiff's counsel sent Byrne's California counsel a copy of the unfiled Complaint and contemporaneously asked if she was authorized to accept service, but that they did not so authorize. Mot. ¶¶ 3, 5.

2.      Plaintiff filed the Complaint on May 7, 2025. D.I. 1. Plaintiff served Defendants with a copy of the Complaint, Summonses, and related exhibits by certified mail, return receipt requested, as required by Superior Court Civil Rule 4 and 10 *Del. C.* §3104, at 2 separate addresses: Byrne's home address, and at the P.O. Box listed in Section 10.3 of the Stock Purchase Agreement ("SPA") for notices and service to Defendants.  Urban Aff. ¶¶ 7-9, D. I. 5.

3.      The green certified mail receipts were returned by the U.S. Postal Service and marked as delivered to Byrne's personal address at 70 Monarch Bay Drive, Dana Pont, CA 92629 and signed for on behalf of all Defendants by Byrne on June 2, 2025.  Copies of the return receipts signed by Byrne were filed as exhibits to the Affidavit of Service filed on June 10, 2025. D.I. 4.

4.      The green certified mail receipts for the second service at the P.O. Box pursuant to Section 10.3 of the SPA were returned as "Return to Sender.  Not

1

EFiled:  Nov 26 2025 03:30PM EST
Transaction ID 77877014
Case No. N25C-05-071 KMM CCLD

Deliverable as Addressed.  Unable to Forward." Apparently, Byrne closed the P

Box designated for notices under the SPA, notwithstanding the active disputes

between the parties related to the SPA, and designated no forwarding address. *See*

Not Deliverable return receipt, attached hereto as Exhibit 1.

5.    None of the Defendants answered the Complaint or otherwise

appeared in the Action despite the deadline for having to do so having passed on

June 23, 2025.

6.    On July 16, 2025, Plaintiff filed its Direction for Entry of Judgment

for Default, supporting Affidavit, and Statement of Amount Due ("Statement").

The Statement reflects the $1,545,013.40 plus $281,800.70 of the additional

$363,913.20 in Losses sought in the Complaint, for a total of $1,826,814.10 in

principal, plus documented attorneys' fees and cost associated with this Action,

and post-judgment interest at the legal rate of 9.5%.  D.I. 5.  That day, the Default

Judgment was entered on the Court's docket.  *Id.*

7.    Defendants filed their Motion on October 27, 2025, more than three

months after the entry of default judgment.

## ARGUMENT

8.    Although it is true that many courts have "adopted a policy in favor of

resolving cases on their merits," that policy is counterbalanced, within the Court's

discretion, by weighing three factors in determining whether a default judgment

2

EFiled:  Nov 26 2025 03:30PM EST
Transaction ID 77877014
Case No. N25C-05-071 KMM CCLD

should be vacated: "first, whether culpable conduct of the defendant led to the default and, if so, was it excusable; second, whether the defendant has a meritorious defense; and third, whether the plaintiff will be prejudiced." *See Apt. Commun's Corp. v. Martinelli*, 859 A.2d 67, 70 (Del. 2004). As the Supreme Court noted, "[b]ecause the first factor is a threshold, the trial court need only consider the second and third factors 'if a satisfactory explanation has been established for failing to answer the complaint, e.g. excusable neglect or inadvertence.'" *Stevenson v. Swiggett,* 8 A.3d 1200, 1207 (Del. 2010). The burden is on Defendants to show that any neglect was excusable. *See Doherty & Assoc., Inc. v. People First Ins., Inc.,* 2018 WL 1446412, at * 3 (Del Super. Ct. Mar. 22, 2018).

9.      Defendants claim they are entitled to relief under Rule 60(b)(4) because they never actually received service of process. Mot. ¶ 11. Plaintiff properly served Defendants under Superior Court Civil Rule 4 and 10 *Del. C.* §3104. *See Univ. Captl. Mgmt., Inc. v. Micco World, Inc.*, 2011 WL 2347612, at *3 (Del. Super. Ct. June 2, 2011) (finding signed return receipt and filed affidavit of service as presumptive proof of proper service).

10.     Byrne contends that he does not recognize the signature on the return receipt and insists it is not his. Byrne Aff. ¶ 5. Byrne does not address in his Affidavit, however, whether he authorized someone at his residence to sign on Defendants' behalf. Given Byrne's refusal to allow his counsel to accept service,

3

EFiled:  Nov 26 2025 03:30PM EST
Transaction ID 77877014
Case No. N25C-05-071 KMM CCLD

and the curious termination of the post office box designated for service under the SPA, Byrne's contention is suspect. This Court  has refused to vacate a judgment where the defendant actively avoided service.  *See Deshields v. Bolton*, 2020 WL 242482, at *4 (Del. Super. Ct. Jan. 14, 2020).

11.    Even assuming that Defendants did not actively seek to avoid service, the "inadvertent error in the scope of the automated notice of Ameris' filings" (Mot. ¶ 15) does not constitute excusable neglect.  *See, e.g., Model Fin. Co. v. Barton,* 188 A.2d 233, 235 (Del. Super. Ct. 1963) (holding that carelessness on the part of counsel "cannot automatically be deemed 'excusable neglect'" under Rule 60).  Moreover, contrary to Defendants' contention that their failure to respond to the Complaint "was compounded by Ameris' decision not to provide any notice to Byrne's counsel of its intent to seek default judgment (or its position that service had validly been effectuated)" (Mot. ¶ 15), Plaintiff had no obligation to serve Defendants with such notice. *See Apt. Commun's Corp.*, 859 A.2d at 73 ("Generally, where there has not been a formal entry of appearance in an action, notice of a default judgment request is not required.").

12.    Defendants further contend that the entry of default was improper because Plaintiff sought damages in "an amount to be proven at trial". Mot. ¶ 12. Defendants ignore both Rule 55(b)(1) and paragraph 27 of the Complaint.  Rule 55(b)(1) allows entry of judgment by default "for a sum certain or *for a sum which*

4

EFiled:  Nov 26 2025 03:30PM EST
Transaction ID 77877014
Case No. N25C-05-071 KMM CCLD

*can by computation be made certain.*" As set forth above, Paragraph 27 of the

Complaint sought specific, enumerated damages, subject only to a final

determination by the Fifth Circuit of whether the full $363,913.20 of indemnifiable

legal fees would be awarded.  On June 6, 2025, the Fifth Circuit entered a final

supplemental judgment (of which this Court may take judicial notice) awarding

indemnifiable legal fees and expenses totaling $281,800.70 of the additional

$363,913.20 in Losses specifically sought in the Paragraph 27.  A copy of the Fifth

Circuit Supplemental Judgment is attached hereto as Exhibit 2. Thus, the Statement

reflects a sum certain, or at the very least, a sum which can by computation be

made certain.

13.     Equally unavailing is Byrne's contention that the amount in dispute is

uncertain because Defendants dispute whether the entire amount awarded in the

MHT litigation falls within their indemnification obligations and "whether the

underlying costs and expenses incurred by Ameris were 'reasonable.'" Mot. ¶ 12.

Until his termination in June 2024, Byrne, as CEO, personally directed the MHT

Litigation; proffered a declaration in it; and communicated directly with the

attorneys defending the litigation.  Compl. ¶ 22.  Any claim that the indemnifiable

Losses were unreasonable – when he led the defense of the MHT Litigation –  is

specious.

EFiled:  Nov 26 2025 03:30PM EST
Transaction ID 77877014
Case No. N25C-05-071 KMM CCLD

14.    Even if this Court finds excusable neglect, the inquiry is not over: t Court then considers whether Defendants have meritorious defenses and whether Plaintiff will be prejudiced if the default judgment is vacated.  As set forth above, Defendants cannot credibly claim that there is a question as to whether the Losses are indemnifiable when Byrne himself directed the MHT Litigation while CEO. Significantly, Byrne waived any defense to Defendants' obligation to indemnify Ameris for the Losses when, on November 15, 2023, he wrote to Ameris "I agree to reimburse Ameris for the MHT legal invoices per my contractual obligation in the stock purchase agreement."  A copy of the November 15, 2023 email is attached hereto as Exhibit 3.

15.    Plaintiff will be prejudiced if the default judgment is vacated. Plaintiff has depended on Byrne's admission that Defendants will reimburse it for the Losses associated with the MHT Litigation and paid them out of pocket, notwithstanding that the MHT Litigation has been going on for years – including prior to the parties' execution of the SPA.  Byrne should not be permitted to continue to evade his admitted contractual obligations.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Vacate the Default Judgment, and award Plaintiff its attorneys' fees and costs incurred with opposing the Motion.

6

EFiled:  Nov 26 2025 03:30PM EST
Transaction ID 77877014
Case No. N25C-05-071 KMM CCLD

Dated:  November 26, 2025

PINCKNEY, WEIDINGER, URBAN
 & JOYCE LLC

*/s/ Patricia R. Urban*
Patricia R. Urban (DE Bar #4011)
Elizabeth Wilburn Joyce (DE Bar #3666)
Megan Ix Brison (DE Bar #6721)
2 Mill Road, Suite 204
Wilmington, DE  19806
Phone: 302-504-1497
Fax: 302-442-7046
Email: purban@pwujlaw.com
        ewilburnjoyce@pwujlaw.com
        mixbrison@pwujlaw.com

EFiled:  Nov 26 2025 03:30PM EST
Transaction ID 77877014
Case No. N25C-05-071 KMM CCLD

# EXHIBIT 1



Pinckney, Weidinger, Urban
& Joyce LLC
2 Mill Road, Suite 204
Wilmington, DE 19806



CERTIFIED MAIL

7022 1670 0003 1790 0117



Retail

RDC 99

92829

NIXIE        910  FE 18CU         1         0006/06/25

RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

BC:  19806218454          *2347N1371Z8-00203

The Patrick E. Byrne Revocable Trust
U/T/A Dated February 23, 2001
c/o Patrick E. Byrne
P.O. Box 232
Dana Point, California 92629

**EFiled:  Nov 26 2025 03:30PM EST**
**Transaction ID 77877014**
**Case No. N25C-05-071 KMM CCLD**

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BALBOA CAPITAL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-898-M |
| | § | |
| OKOJI HOME VISITS MHT, LLC et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## SUPPLEMENTAL JUDGMENT

In light of the Order Accepting Findings and Recommendation of the United States Magistrate Judge, it is **ORDERED, ADJUDGED AND DECREED** that Plaintiff Balboa Capital Corporation shall pay (1) to the FBFK Defendants $85,421.25, in reasonable attorneys fees, and $1,079.70, in litigation expenses; and (2) to the Hall Griffin Defendants $190,646.25, in reasonable attorneys fees, and $4,653.50 in litigation expenses.

Execution may issue for the sums awarded herein.

**DATED this 6th day of June, 2025.**

BARBARA M. G. LYNN
SENIOR UNITED STATES DISTRICT JUDGE

**EFiled:  Nov 26 2025 03:30PM EST**
**Transaction ID 77877014**
**Case No. N25C-05-071 KMM CCLD**

# Exhibit 3

| | |
|---|---|
| **From:** | Byrne, Patrick |
| **To:** | Stokes, Nicole |
| **Cc:** | Spencer, Jody; LaHaise, James; Silva, Phil |
| **Subject:** | RE: Purchase escrow reconciliation and final distribution |
| **Date:** | Wednesday, November 15, 2023 9:21:38 PM |
| **Attachments:** | image001.png |

Hi Nicole,

I agree to reimburse Ameris for the MHT legal invoices per my contractual obligation regarding MHT in the stock purchase agreement.

Will you please release the $456,005 in escrow to me.

Thank you,

**Patrick Byrne**
**Chief Executive Officer**
**Balboa Capital, A Division of Ameris Bank**
(D) 949-553-3415 | pateb@balboacapital.com



**From:** Stokes, Nicole <Nicole.Stokes@amerisbank.com>
**Sent:** Monday, September 25, 2023 4:28 PM
**To:** Byrne, Patrick <pateb@balboacapital.com>
**Cc:** Spencer, Jody <Jody.Spencer@amerisbank.com>; LaHaise, James <James.LaHaise@amerisbank.com>; Silva, Phil <phils@balboacapital.com>
**Subject:** Re: Purchase escrow reconciliation and final distribution

What happened to the $266,791.71 sales tax issue that was due to Ameris?

We already settled $453,994.84 out of escrow to you in good faith on December 15, 2022.

Our intent is to always do the right thing.  I hope you concur and also do the right thing.

Again, please confirm that you will reimburse us for these MHT legal invoices per your contractual obligation regarding MHT in the stock purchase agreement.

**Nicole S. Stokes**
**Ameris Bank** | EVP, Chief Financial Officer
3490 Piedmont Rd NE, Suite 1550 | Atlanta, GA 30305
(D) 404-240-1514

nicole.stokes@amerisbank.com

Visit us online at www.amerisbank.com

On Sep 25, 2023, at 11:53 AM, Byrne, Patrick <pateb@balboacapital.com> wrote: