# Exhibit 12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERIS BANK,<br><br>             Plaintiff,<br><br>        v.<br><br>PATRICK E. BYRNE, THE PATRICK E. BYRNE REVOCABLE TRUST U/T/A DATED FEBRUARY 23, 2001, and THE PATRICK E. BYRNE IRREVOCABLE TRUST U/T/A DATED JULY 22, 2021,<br><br>             Defendants. | Case No. |

### COMPLAINT

Plaintiff Ameris Bank ("Ameris" or "Buyer"), by and through its undersigned counsel, hereby brings the following Complaint against Defendants Patrick E. Byrne ("Byrne"), The Patrick E. Byrne Revocable Trust U/T/A dated  February 23, 2001 (the  "Revocable Trust"), and The Patrick E.  Byrne Irrevocable Trust U/T/A dated July 22, 2021 (the "Irrevocable Trust" and together with the Revocable Trust, the "Trusts" and, collectively with Byrne,  "Sellers") for breach of contract and indemnification arising under a Stock Purchase Agreement dated as of December 10, 2021 (the "SPA") providing for Ameris's purchase of all of the issued and outstanding shares of capital stock of Balboa Capital Corporation ("Balboa"), and in support thereof, states as follows:

### THE PARTIES

1. Plaintiff Ameris is a corporation organized under the laws of the state of Georgia. Its principal place of business is in Atlanta, Georgia.

2. Upon information and belief, Defendant Byrne is an individual residing in Orange County, California.

3. Upon information and belief, the Trusts were formed in and under the laws of the

1

state of California.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this action involves an amount in controversy exceeding the sum value of $75,000.00 exclusive of interest and cost, and is between citizens of different states.

5.      This Court has personal jurisdiction over the parties because each contractually consented to the exclusive jurisdiction of the federal or state courts located in Delaware in SPA Section 8.4(c), which provides that the state and federal courts of Delaware shall have exclusive jurisdiction over all claims for indemnification. SPA Section 10.8 similarly provides for jurisdiction in Delaware courts for the purposes of any action arising out of the SPA or related transactions.

6.      In SPA Section 10.8, the parties also agreed to venue in Delaware, and irrevocably and unconditionally waived any objection to the laying of venue of any action arising out of the SPA or related transactions in the State of Delaware. Venue is therefore appropriate in this Court.

7.      In SPA Section 10.7, the parties contractually agreed to have any dispute arising out of or relating to the SPA be governed by the law of the State of Delaware.

## STATEMENT OF FACTS

**A.      The Balboa Acquisition**

8.      Non-party Balboa Capital Corporation ("Balboa") was founded by Defendant Byrne and a non-party colleague in or about 1988. At all times relevant hereto, Balboa is and was an online provider of business lending solutions to small and mid-sized businesses nationwide. Byrne served as Balboa's Chief Executive Officer ("CEO").

9.      Identifying an opportunity to accelerate its small business lending initiatives and increase its presence in the point-of-sale financing market, Ameris negotiated a potential

acquisition of Balboa with Byrne.

10.     During pre-acquisition due diligence, Ameris learned that Balboa was engaged in several lawsuits, including but not limited to *Dr. Jaideep Patel v. Scott Postle, Balboa Corporation, et al.*, and *Samuel Feng, M.D. v. America's MHT, Inc., et al.* (collectively, with any appeals of either of the foregoing or other actions substantially related to the facts and circumstances of the foregoing, the "MHT Litigation"). Ameris negotiated for certain indemnification rights in connection with the MHT Litigation to be included in the SPA.

11.     As a result of the parties' negotiations regarding the acquisition, Balboa, Byrne, and the Trusts, which then owned all of the issued and outstanding shares of Balboa, and Ameris executed the SPA dated as of December 10, 2021, along with related agreements, including an employment agreement pursuant to which Byrne would continue to serve as CEO of Balboa. Post acquisition, Balboa's operations have been conducted by Ameris as a separate division within Ameris.

## B.     The MHT Litigation

12.     America's Medical Home Team, Inc. ("MHT") operated a program through which physicians could remotely supervise nurse practitioners. MHT required that, in order for a physician to participate, a limited liability company (the "Physician LLC") had to be created to secure financing from a lender to fund the purchase of one or more licenses from MHT. In October 2016, Balboa became a lender for MHT. By June 2017, all of the Physician LLCs had defaulted on their Balboa loans.

13.     In or about May 2017, Balboa initiated collection suits against sixteen of the Physician LLCs, followed by suits against additional collections cases that were transferred and consolidated in the United States District Court for the Northern District of Texas, Dallas Division

3

("NDT").  Upon information and belief, as CEO of Balboa both before and after the acquisition, Byrne directed the MHT Litigation and/or was in regular communication with Balboa's attorneys regarding it.  In fact, after several years of litigation, the parties filed cross-motions for summary judgment, and the Physician LLCs filed motions to strike, including a declaration proffered by Byrne in the MHT Litigation.

14.     Post-closing of the SPA, in March 2022, the NDT held oral argument on the then-pending motions.  The NDT struck the Byrne declaration and granted the Physician LLC defendants' motion for summary judgment on Balboa's breach of contract and breach of guaranty claims.  In March 2023, the NDT issued its opinion and entered judgment that Balboa take nothing on its claims.

15.     On March 15, 2023, the Physician LLCs moved for attorneys' fees and costs in the NDT, to which Balboa objected.  The NDT issued its decision on July 29, 2024, awarding the Physician LLCs a total of $1,013,159.17 in attorneys' fees and a total of $59,501.89 in litigation expenses.

16.     Balboa appealed the summary judgment decision to the United States Court of Appeals for the Fifth Circuit (the "Fifth Circuit"). On July 30, 2024, the Fifth Circuit affirmed the NDT's order striking the Byrne declaration and affirmed the summary judgment in favor of the Physician LLCs.

17.     The Physician LLCs sought an additional $358,180.00 in attorneys' fees and $5,733.20 in expenses related to the Fifth Circuit appeal. On June 6, 2025, the NDT issued a Supplemental Judgment awarding $276,067.50 in attorneys' fees and $5,733.20 in costs.

18.     Thus, the MHT Litigation was pending in the NDT at the time of the SPA closing and was expected to, and did in fact, continue post-closing. Accordingly, Ameris negotiated

express indemnification rights to be included in the SPA related to the MHT Litigation.

## C.    Ameris's Right to Indemnification

19.    In addition to the $1,289,226.67 in attorneys' fees and $65,235.09 in litigation expenses awarded by the NDT to the Physician LLCs in the MHT Litigation, Ameris suffered a further Loss, as defined below, of $472,352.34 in attorneys' fees and expenses for Balboa's legal representation in the MHT Litigation.

20.    Byrne and the Trusts agreed in the SPA to indemnify Ameris for all of these Losses.

21.    SPA Section 8.2 provides that the Sellers, "jointly and severally, shall indemnify and hold harmless" Ameris against any Losses it incurs "resulting from or arising out of" the MHT Litigation.  SPA Article I defines "Losses" as follows:

> 'Losses' means losses, liabilities, damages, awards, settlement payments, interest obligations, fines, Taxes, interest, deficiencies, costs, expenses, assessments and penalties including reasonable costs of investigating, preparing, or defending any Action and reasonable attorneys' fees and other reasonable expenses of litigation or similar proceedings, and, only to the extent recovered by a third party in connection with a Third Party Claim, punitive, consequential or exemplary damages.

22.    SPA Section 8.4 sets forth the method for asserting claims for indemnification.  It provides that the Indemnified Party (here, Ameris) must give written notice of the Third Party Claim with an estimate of the claimed Losses "to the extent then ascertainable (which estimate shall not be conclusive of the final amount of such Third Party Claim)" and copies of the pleadings within 20 days following the assertion of such claim.  In his role as CEO of Balboa after the acquisition, Byrne was provided with regular notice of Ameris's Losses associated with the MHT Litigation as they became ascertainable.

23.    Byrne had actual notice of the MHT Litigation and the amount of Losses likely to

5

be incurred, both pre- and post-SPA closing, and certainly had copies of the pleadings. Indeed, in his role as Balboa's CEO, he directed the MHT Litigation; proffered a declaration on behalf of Balboa in the NDT; and communicated directly with Balboa's attorneys about it.

24.     Byrne as CEO of Balboa was also notified in writing of the Losses for which Ameris sought indemnification for the MHT litigation; was provided in his role as CEO with information regarding the receivables carried on the books for them; and was repeatedly asked by Ameris to confirm that he would honor his obligation to indemnify Ameris for the attorneys' fees and litigation expenses associated with the MHT litigation.

25.     After Ameris's repeated requests for indemnification for the MHT Losses, on November 15, 2023, Byrne admitted and ratified in writing his obligation under the SPA to indemnify Ameris for the MHT Litigation: "I agree to reimburse Ameris for the MHT legal invoices per my contractual obligation in the stock purchase agreement."

26.     Ameris terminated Byrne's employment as CEO on or about June 30, 2024. Byrne still had not honored his admitted and ratified indemnification obligation under the SPA at the time of his termination.

27.     After the NDT issued its opinion and order on July 29, 2024 awarding an aggregate of $1,072,661.06 in attorneys' fees and expenses to the Physician LLCs and the Fifth Circuit issued its opinion on July 30, 2024 affirming the NDT's decision, on August 15, 2024, Ameris notified Byrne in writing of both the sum certain of the attorneys' fees and expenses award and of the amount of legal fees Balboa and Ameris themselves incurred in connection with their own legal representation in the MHT Litigation.

28.     To date, Byrne and the Trusts owe Ameris at least the $1,289,226.67 in attorneys' fees and $65,235.09 in litigation expenses awarded to the Physician LLCs by the NDT plus the

6

$472,352.34 of legal costs for Balboa's legal representation in the MHT Litigation for a grand total of $1,826,814.10.

29.     To date, Byrne and the Trusts have not indemnified Ameris for the MHT Litigation. Byrne and the Trusts as Sellers have breached the SPA. Byrne has also breached his written agreement on November 15, 2023 to honor his indemnification obligations under the SPA, and should be estopped from denying his ratification of the indemnification provision of the SPA and his promise to indemnify Ameris.

30.     Ameris has performed its obligations under the SPA.

## COUNT I: INDEMNIFICATION AND BREACH OF CONTRACT
### (Pled in the alternative)

31.     Ameris realleges and incorporates Paragraphs 1 through 29 as if set forth fully herein.

32.     Ameris has satisfied all conditions precedent to bringing this action or such conditions have been waived.

### I.A.    Indemnification for MHT Litigation

33.     Byrne and the Trusts, as the Sellers, are required under Article 8, Section 8.2(f) of the SPA to indemnify Ameris from and against Losses resulting from, or arising out of, the MHT Litigation.

34.     Byrne and the Trusts, as the Sellers, are required under Article 8, Section 8.2(e) of the SPA to indemnify Ameris from and against Losses resulting from, or arising out of, their failure to perform any agreement they made under the SPA.

35.     Ameris timely notified the Sellers of its claim for indemnification.

36.     Byrne had actual notice of Ameris's claim for indemnification.

37.     Byrne ratified the indemnification provision in the SPA in writing on November 15,

7

2023.

38.     The Sellers have breached their agreement to indemnify Ameris for its Losses resulting from, or arising out of, the MHT Litigation.

39.     As a direct and proximate cause of the Sellers' breach of their agreement to indemnify Ameris for its Losses resulting from, or arising out of, the MHT Litigation, Ameris has sustained damages and is entitled to indemnification as provided in the SPA in an amount to be proven at trial, but not less than $1,826,814.10, together with interest, reasonable attorneys' fees, disbursements, and costs of this action.

**I.B.     Breach of Contract**

40.     Ameris realleges and incorporates Paragraphs 1 through 38 as if set forth fully herein.

41.     Ameris has satisfied all conditions precedent to bringing this action or such conditions have been waived.

42.     Byrne and the Trusts, as the Sellers, are required under Article 8, Section 8.2(f) of the SPA to indemnify Ameris from and against Losses resulting from, or arising out of, the MHT Litigation.

43.     On November 15, 2023 Byrne ratified Section 8.2(f).

44.     On November 15, 2023, Byrne agreed to reimburse Ameris for the MHT legal invoices.

45.     To date, neither Byrne nor the Trusts has reimbursed Ameris for its MHT Losses, which to date total at least $1,826,814.10.

46.     As a direct and proximate cause of Byrne's' breach of his agreement to reimburse Ameris for its MHT Losses, Ameris has sustained damages in an amount to be proven at trial, but

8

not less than $1,826,814.10, together with interest, reasonable attorneys' fees, disbursements, and costs of this action.

## COUNT II: PROMISSORY ESTOPPEL

47.     Ameris realleges and incorporates Paragraphs 1 through 45 as if set forth fully herein.

48.     Ameris has satisfied all conditions precedent to bringing this action or such conditions have been waived.

49.     On November 15, 2023, Byrne made a clear and unambiguous promise to reimburse Ameris for the MHT legal invoices.

50.     Ameris reasonably relied on Byrne's promise to pay the MHT legal invoices and Ameris continued to pay for the MHT Litigation and incur Losses.

51.     Ameris's reliance on Byrne's promise to pay the MHT invoices was foreseeable.

52.     Byrne has breached his promise to pay the MHT legal invoices.

53.     Ameris suffered Losses and continued to incur Losses in connection with the MHT Litigation as a result of its reliance on Byrne's promise to pay the MHT legal invoices.

54.     Ameris has sustained damages in an amount to be proven at trial, but not less than $1,826,814.10, together with interest, reasonable attorneys' fees, disbursements, and costs of this action.

## RELIEF REQUESTED

55.     WHEREFORE, Plaintiff Ameris Bank respectfully requests that this Court:

    a.  Enter judgment in favor of Plaintiff Ameris Bank;

    b.  Award Plaintiff indemnification damages;

    c.  Award Plaintiff compensatory damages;

9

d.  Award Plaintiff its costs and reasonable attorneys' fees;

e.  Award Plaintiff such other and further relief as this Court deems just and proper.

Dated: February 20, 2026

Smith, Katzenstein & Jenkins LLP

  /s/  *Megan Ix Brison*
Elizabeth Wilburn Joyce (DE Bar #3666)
Megan Ix Brison (DE Bar #6721)
Lauren A. Black (DE. Bar #7048)
1000 N. West Street, Suite 1501
Wilmington, Delaware  19801
(302) 652-8400
ewj@skjlaw.com
mib@skjlaw.com
lab@skjlaw.com

*Counsel for Plaintiff*