**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PATRICK E. BYRNE, THE PATRICK E. BYRNE REVOCABLE TRUST U/T/A DATED FEBRUARY 23, 2001, and THE PATRICK E. BYRNE IRREVOCABLE TRUST U/T/A DATED JULY 22, 2021,<br><br>    Plaintiffs,<br><br>  v.<br><br>AMERIS BANK,<br>    Defendant. | C.A. No. 25-1557-JLH |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF
<u>MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

**SMITH, KATZENSTEIN & JENKINS LLP**

*Of Counsel*:

Benjamin J. Razi
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
brazi@cov.com

Robert C. Gianchetti
**COVINGTON & BURLING LLP**
30 Hudson Yards
New York, NY 10001
(212) 841-1000
rgianchetti@cov.com

Elizabeth Wilburn Joyce (DE Bar #3666)
Megan Ix Brison (DE Bar #6721)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
ewj@skjlaw.com
mib@skjlaw.com

*Attorneys for Defendant Ameris Bank*

Dated: July 23, 2026

**TABLE OF CONTENTS**

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ..................................... 1

SUMMARY OF THE ARGUMENT ...................................................................................... 3

STATEMENT OF FACTS ...................................................................................................... 4

        A.      Ameris and Byrne Enter into the SPA, Under Which Byrne Agrees to Indemnify Ameris and Byrne Disclaims Extracontractual Representations........... 4

        B.      According to Byrne, Ameris Breaches the LTIP After Executing the SPA. .......... 5

        C.      Byrne Sues Ameris in California Federal Court, Asserting Breach of the LTIP. ........................................................................................................................ 6

        D.      Ameris Sues Byrne for Failing to Indemnify Ameris as Required by the SPA, and Byrne Files This Retaliatory Action. ...................................................... 7

ARGUMENT ......................................................................................................................... 8

I.      PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUDULENT INDUCEMENT. .............................................................................................................. 8

        A.      Plaintiffs' Fraud Claim Is a Bootstrapped Claim for Breach of Contract............... 9

        B.      Plaintiffs Claim Fraudulent Inducement of the SPA Without Identifying a Single Alleged Misrepresentation Concerning that Agreement. ......................... 11

        C.      Plaintiffs' Claim for Fraudulent Inducement of the SPA Is Barred by the Plain Language of that Agreement. ...................................................................... 12

        D.      Plaintiffs Fail to Allege Fraud Based on Representations Concerning Ameris's Intent to Comply with the LTIP in the Future........................................ 14

        E.      Plaintiffs Are Not Entitled to Rescission or Reformation of the SPA. ................ 15

        F.      Plaintiffs' Alternative Claims for "Equitable Fraud" Likewise Fail. ................... 16

II.     BYRNE IS CURRENTLY LITIGATING THE CHALLENGED LTIP IN CALIFORNIA AND CANNOT SPLIT HIS LTIP CLAIMS. ....................................... 17

III.   PLAINTIFFS SHOULD BE ESTOPPED FROM CLAIMING THAT THE SPA WAS FRAUDULENTLY INDUCED............................................................................ 18

IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT BASED ON AMERIS'S DELAWARE SUPERIOR COURT LAWSUIT...................... 20

CONCLUSION.................................................................................................................... 20

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFN, Inc. v. Schlott, Inc.*,
  798 F. Supp. 219 (D.N.J. 1992) ...................................................................................19

*Allied Erecting & Dismantling Co. v. USX Corp.*,
  249 F.3d 191 (3d Cir. 2001).........................................................................................15

*Am. Elec. Labs., Inc. v. Dopp*,
  334 F. Supp. 339 (D. Del. 1971)...................................................................................19

*Am. Life Ins. Co. v. Parra*,
  187 F. Supp. 2d 203 (D. Del. 2002)..............................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................8

*Black Horse Cap., LP v. Xstelos Holdings, Inc.*,
  2014 WL 5025926 (Del. Ch. Sept. 30, 2014) ....................................................11, 12, 13

*Bos. Sci. Corp. v. Wall Cardiovascular Techs., LLC*,
  647 F. Supp. 2d 358 (D. Del. 2009)..............................................................................17

*Cato Cap. LLC v. Hemispherx Biopharma, Inc.*,
  70 F. Supp. 3d 607 (D. Del. 2014)................................................................................14

*Cheffers v. Ideagen Software Inc.*,
  2025 WL 2549411 (D. Del. Sept. 4, 2025)................................................................10, 11

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
  70 F.4th 668 (3d Cir. 2023) ............................................................................................8

*Cornell Glasgow, LLC v. La Grange Props. LLC*,
  2012 WL 2106945 (Del. Super. June 6, 2012) ...........................................................9, 11

*Daughtery v. Dondero*,
  2023 WL 461112 (Del. Ch. Jan. 27, 2023)...................................................................17

*Device Enhancement LLC v. Amazon.com., Inc.*,
  189 F. Supp. 3d 392 (D. Del. 2016)................................................................................8

*In re Dex Media, Inc.*,
  595 B.R. 19 (D. Del. 2018)...........................................................................................18

ii

*Dunn v. FastMed Urgent Care, P.C.*,
   2019 WL 4131010 (Del. Ch. Aug. 30, 2019) ...............................................................15

*Evans v. Cantor Ins. Grp., LP*,
   2022 WL 3908005 (D. Del. Aug. 30, 2022) .................................................................12

*Fortis Advisors LLC v. Dialog Semiconductor PLC*,
   2015 WL 401371 (Del. Ch. Jan. 30, 2015)..............................................................16, 17

*Goureau v. Lemonis*,
   2021 WL 1197531 (Del. Ch. Mar. 30, 2021)................................................................17

*Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc.*,
   789 F. Supp. 2d 622 (E.D. Pa. 2011) .........................................................................18

*Interim Healthcare, Inc. v. Sherion Corp.*,
   2003 WL 22902879 (Del. Ch. Nov. 19, 2003) .............................................................16

*Iotex Commc'ns, Inc. v. Defries*,
   1998 WL 914265 (Del. Ch. Dec. 21, 1998).....................................................................9

*Jablonski v. Pan Am. World Airways, Inc.*,
   863 F.2d 289 (3d Cir. 1988)........................................................................................20

*Jakimas v. Hoffmann-La Roche, Inc.*,
   485 F.3d 770 (3d Cir. 2007)........................................................................................19

*Kostyszyn v. Martuscelli*,
   2014 WL 3510676 (Del. Ch. July 14, 2014)............................................................15, 16

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
   337 F.3d 314 (3d Cir. 2003)........................................................................................18

*MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*,
   411 F. Supp. 3d 316 (D. Del. 2019)...............................................................................8

*Monica v. Delta Data Software, Inc.*,
   2026 WL 370756 (Del. Super. Feb. 10, 2026).............................................................15

*Paul Elton, LLC v. Rommel Del., LLC*,
   2020 WL 2203708 (Del. Ch. May 7, 2020)...................................................................17

*Prairie Cap. III, L.P. v. Double E Holding Corp.*,
   132 A.3d 35 (Del. Ch. 2015).......................................................................................13

*PureShares, LLC v. Zimnisky*,
   2025 WL 606903 (D. Del. Feb. 25, 2025).................................................................9, 10

*RGC Int'l Invs., LDC v. Ari Network Servs., Inc.*,
   2004 WL 189784 (D. Del. Jan. 22, 2004) ..................................................................20

*Sapp v. Indus. Action Servs., LLC*,
   2024 WL 3444633 (D. Del. July 17, 2023) ...........................................................14, 15

*S'holder Rep. Servs. LLC v. Albertsons Cos.*,
   2021 WL 2311455 (Del. Ch. June 7, 2021) ...........................................................12, 13

*T. Gray Util. & Rehab Co. v. Mack Operations, LLC*,
   2026 WL 84231 (Del. Ch. Jan. 12, 2026) ..................................................................15

*Talkdesk, Inc. v. DM Trans, LLC*,
   2024 WL 2799307 (Del. Super. May 31, 2024) ........................................................13

*In re Tesla, Inc. Derivative Litig.*,
   2025 WL 3689114 (Del. Dec. 19, 2025) ....................................................................15

*Tristate Courier & Carriage, Inc. v. Berryman*,
   2004 WL 835886 (Del. Ch. Apr. 15, 2004) .................................................................9

*Univ. Enter. Grp., L.P. v. Duncan Petroleum Corp.*,
   2013 WL 3353743 (Del. Ch. July 1, 2013) ................................................................17

*Vatidis v. Trimble, Inc.*,
   2019 WL 3546693 (D. Del. Aug. 5, 2019) ...................................................................9

*VICI Racing, LLC v. T-Mobile USA, Inc.*,
   763 F.3d 273 (3d Cir. 2014) ......................................................................................20

*vMedex, Inc. v. TDS Operating, Inc.*,
   2020 WL 4925512 (D. Del. Aug. 21, 2020) ...............................................................14

*Winner Acceptance Corp. v. Return on Cap. Corp.*,
   2008 WL 5352063 (Del. Ch. Dec. 28, 2008) .............................................................14

*Winters v. Patel*,
   154 F. App'x 294 (3d Cir. 2005) ..........................................................................15, 19

*Yetter v. Wise Power Sys., Inc.*,
   929 F. Supp. 2d 329 (D. Del. 2013) ...........................................................................18

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................................................8

iv

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

This lawsuit is a baseless ploy by Patrick Byrne to escape his express indemnification obligations owed to Ameris Bank under the parties' Stock Purchase Agreement ("SPA"). Although dressed up with charged accusations like "fraud," this case rests on the simple allegation that Ameris did not live up to its obligations under a separate contract being litigated in California. Such bootstrapping and duplicative litigation is prohibited under Delaware law.

In December 2021, Ameris acquired Byrne's former company, Balboa Capital Corporation, an online provider of business lending solutions. Pursuant to the SPA, Ameris agreed to pay Byrne and two related trusts (collectively, "Plaintiffs")[1] approximately $186 million and other valuable consideration for the stock of Balboa. In exchange, among other things, Byrne agreed to indemnify Ameris with respect to losses incurred in connection with several pending lawsuits involving Balboa. As of February 2026, Ameris's losses sustained in those lawsuits total over $1.8 million. Rather than complying with the clear and unambiguous terms of the SPA into which he freely entered in 2021 and acknowledged thereafter, Byrne refused to pay Ameris, forcing Ameris to sue for the relief it is owed. *See Ameris Bank v. Byrne*, No. 26-cv-190 (D. Del.).

On the heels of Ameris's suit against Byrne for breach of the SPA indemnification provision, Byrne initiated his own defensive lawsuit against Ameris.[2] In this action, Byrne claims that Ameris fraudulently induced him to enter into the SPA based on purported representations concerning Ameris's intent to comply with a separate alleged contract between the parties—the "Long-Term Incentive Plan," or "LTIP," in which Byrne might participate as an Ameris employee.

---

[1] This brief refers to "Byrne" and "Plaintiffs" interchangeably as having the same meaning.

[2] Though Byrne's lawsuit predates this lawsuit by a few months, Ameris had previously (and first) sued Byrne in the Delaware Superior Court in May 2025 for breach of the SPA indemnification provision. Ameris later discontinued that lawsuit and refiled the suit here. Compl. ¶¶ 35–36.

1

According to Byrne, Ameris's breach of the LTIP following execution of the SPA in December 2021 entitles Byrne to rescind the SPA and his indemnification obligation with it.  Byrne is mistaken, and his scheme to eliminate Ameris's critical indemnification rights should be rejected.

Byrne's fraudulent inducement claims are defective as a matter of law.  The First Amended Complaint (the "Complaint" or "Compl.") lays bare that Byrne is attempting to "bootstrap" a claim for breach of the *LTIP*—which he is litigating in California federal court and brought to verdict— into a claim for fraudulent inducement of the *SPA*, an entirely different contract.  Delaware courts routinely dismiss manufactured claims of this nature and preclude plaintiffs from transforming a claim for breach into one for fraud.  Moreover, each of Byrne's claims for fraudulent inducement of the SPA rests on non-actionable promises of future performance under the LTIP, not any contemporaneous misrepresentations of present fact regarding the SPA—the contract he seeks to rescind.  Instead, Byrne relies exclusively on Ameris's purported misconduct *after* execution of the SPA relating to the separate LTIP.  Indeed, the Complaint fails to plead *any* misrepresentations relating to the SPA, much less with the particularity required under Delaware law.  For good reason: the SPA disclaims extracontractual representations and confirms that any prior written or oral agreements between the parties are superseded by the SPA.  There is no basis for this Court to rescind the SPA, and Byrne must be required to fulfill his indemnification commitments.

Byrne's claims related to the LTIP also should be dismissed for improper claim-splitting. After the Complaint in this case was filed, Byrne was granted leave to assert in his separate California litigation against Ameris the claim for breach of the LTIP that pervades his Complaint here.  Byrne litigated this claim and prevailed in a jury trial on this claim last month.  Byrne should not be permitted to split his claims and related allegations concerning the LTIP in two different forums; his claims concerning the LTIP in this proceeding should be dismissed.  Nor should Byrne

now be heard to challenge the SPA as tainted by fraud when he has previously endorsed the SPA as a binding agreement negotiated at arms' length between sophisticated parties represented by counsel.   Basic principles of estoppel and ratification prevent Byrne from taking wholly inconsistent positions on the validity of the SPA when they best suit him, including in this litigation where Byrne simultaneously seeks to rescind the SPA *and* also sue for damages thereunder.

Byrne's claim for breach of a forum provision in the SPA fares no better.  Byrne asserts that Ameris breached Section 10.8 by originally filing its affirmative lawsuit for breach of the SPA indemnification provision in the Delaware Superior Court, rather than this Court or the Delaware Court of Chancery.  Byrne ignores, however, that the indemnification provision giving rise to Ameris's claims expressly allows for Ameris to bring suit in any state or federal court in Delaware, including the Delaware Superior Court.  In any event, Byrne has not suffered any harm as a result of the initial filing in the Superior Court, as Ameris's indemnification claims are now being litigated in the forum Byrne desires.  Byrne's breach claim therefore should be dismissed.

## SUMMARY OF THE ARGUMENT

Plaintiffs fail to plead fraud with particularity (Counts I–III).  Plaintiffs fail to allege any misrepresentations of present fact relating to the SPA as required to maintain a claim for fraudulent inducement.  Rather, Plaintiffs' theory of fraud is premised on the notion that Ameris did not intend to comply with the LTIP, a separate alleged contract.  That is, at most, a claim for breach of the LTIP improperly styled as a claim sounding in fraud.  Plaintiffs are not entitled to rescission of one contract (the SPA) based on Ameris's purported subsequent breach of a second alleged contract (the LTIP).  Nor may Byrne pursue claims related to the LTIP in this Court when he has already asserted such claims in another forum of his choosing.  And Plaintiffs should not be heard to claim that the SPA is invalid when they have otherwise endorsed its binding effect.

Plaintiffs also fail to state a claim for breach of Section 10.8 of the SPA (Count IV). The SPA expressly authorized Ameris to assert claims relating to the indemnification provision in the Delaware Superior Court. Any dispute related to the forum applicable to Ameris's indemnification claims is now moot based on Ameris's refiling of its claims in this Court.

## STATEMENT OF FACTS[3]

**A.    Ameris and Byrne Enter into the SPA, Under Which Byrne Agrees to Indemnify Ameris and Byrne Disclaims Extracontractual Representations.**

On December 10, 2021, Plaintiffs entered into the SPA with Ameris, under which Ameris acquired all shares of Balboa and Balboa became a wholly-owned subsidiary of Ameris. Compl. ¶¶ 2, 22; Ex. 1, SPA § 2.1.[4] Following the closing of the SPA, Balboa operated as a separately run and operated division of Ameris, with Byrne remaining as an employee in Ameris's Balboa division. Compl. ¶¶ 2, 23; Ex. 1 at 1. In exchange for selling their shares of Balboa, Plaintiffs received over $186 million and other valuable consideration. Ex. 1 § 2.3.

Prior to the parties' execution of the SPA, Ameris discovered in diligence that Balboa was involved in at least two pending lawsuits (the "MHT Litigation"). *See* Compl. ¶¶ 5, 21; Ex. 1 § 8.2(f). In agreeing to the SPA, and accepting the substantial consideration that flowed to them, Plaintiffs, among other things, committed to indemnify and hold harmless Ameris from and against any losses incurred by Ameris resulting from or arising out of the MHT Litigation. Ex. 1 § 8.2(f). As of February 2, 2026, Ameris's losses sustained in connection with the MHT Litigation totaled over $1.8 million. *See* Complaint ¶ 28, D.I. 1, *Ameris Bank v. Byrne*, No. 26-cv-190 (D. Del.). Plaintiffs have not reimbursed Ameris for these significant losses, despite Byrne's assurance in

---

[3] Ameris assumes the truth of the alleged facts drawn from Plaintiffs' Complaint only for purposes of this Motion and reserves the right to dispute any of Plaintiffs' allegations.

[4] "Ex." citations refer to the exhibits attached to the Declaration of Megan Ix Brison of even date.

November 2023 that he "agree[d] to reimburse Ameris for the MHT legal invoices per [his] contractual obligation regarding MHT in the stock purchase agreement." *Id.* ¶¶ 25, 45.

In executing the SPA, Plaintiffs disclaimed any representations or agreements related to the SPA other than those memorialized in the SPA. Plaintiffs agreed that the SPA "constitute[d] the final, complete and exclusive statement of the agreement between the parties with respect to the subject matter hereof and supersede[d] all prior written agreements and all prior or contemporaneous oral agreements with respect to the subject matter hereof." Ex. 1 § 10.5. Plaintiffs further agreed that they and their counsel, along with Ameris, "mutually contributed to [the SPA's] drafting." *Id.* § 10.16(g). Plaintiffs represented as recently as last December that "the SPA was drafted by sophisticated parties negotiating at arms-length." *See* Ex. 2, Byrne's Mot. to Dismiss Ameris's Sup. Ct. Lawsuit, at 2, 10. In fact, Plaintiffs insisted that *Ameris* "cannot credibly challenge . . . the propriety of the SPA," *id.* at 10—exactly what Plaintiffs do here.

**B.      According to Byrne, Ameris Breaches the LTIP After Executing the SPA.**

Separate and apart from the SPA, Ameris allegedly established an LTIP under which Byrne would purportedly be entitled to compensation upon the achievement of performance milestones. Compl. ¶ 17. Though Byrne maintains that Ameris's performance under the LTIP was "[c]ritical" to his decision to enter into the SPA, *id.* ¶ 3, the SPA does not mention the LTIP, much less make the LTIP a condition to closing the SPA, incorporate its terms, or attach it as a schedule or exhibit. *See* Ex. 1; *see also id.* § 10.14. Nor does the LTIP mention the SPA or state that the LTIP was "[c]ritical to [Byrne's] inducement to sell Balboa to Ameris." Compl. ¶ 3; Ex. 3.

Byrne repeatedly accuses Ameris of breaching the LTIP based on calculations of bonuses purportedly owed under the LTIP. *See* Compl. ¶¶ 3, 23, 30. Despite declaring that Ameris "never intended to honor the LTIP" and made a "fraudulent promise that it would comply with the terms

5

of the LTIP," *id.* ¶¶ 3, 4, Byrne does not assert any claim for fraudulent inducement of the LTIP itself.  Byrne only pursues such claims related to the SPA, a separate agreement that does not once mention even the existence of the LTIP.  Though Byrne claims that he was fraudulently induced to enter into the *SPA* and seeks to rescind the *SPA*, *id.* ¶¶ 31, 47, the Complaint does not identify any statements by Ameris relating to the *SPA* which supposedly give rise to the fraudulent inducement claim.  Rather, the Complaint recites only purported misrepresentations concerning Ameris's intent to comply with the separate *LTIP* in the future.  *See id.* ¶¶ 19, 20.

**C.    Byrne Sues Ameris in California Federal Court, Asserting Breach of the LTIP.**

Despite pursuing claims here related to Ameris's purported breach of the LTIP, Byrne has already asserted—and is litigating—the exact same theory of breach in a different forum.

In 2024, Byrne commenced a lawsuit against Ameris related to the termination of his employment with Ameris.  *See Byrne v. Ameris Bank*, No. 24-cv-1989 (C.D. Cal.).  On the eve of trial in that action, Byrne was permitted to assert a claim for breach of the LTIP on the exact same theory challenged in this action—namely, Ameris's purported miscalculation of bonuses owed under the LTIP.  *Compare* Compl. ¶¶ 18, 23, *with* Ex. 4, First Am. Compl. ¶¶ 47–54, D.I. 207, *Byrne v. Ameris Bank*, No. 24-cv-1989 (C.D. Cal. June 10, 2026).  Byrne litigated this claim and prevailed in a jury trial on this claim last month.  *See* Ex. 5, Verdict Form at 5–7, D.I. 227, *Byrne v. Ameris Bank*, No. 24-cv-1989 (C.D. Cal. June 11, 2026).  Byrne now effectively asserts in this Court that he was defrauded into signing the very alleged agreement (the LTIP) under which he has stood, sued Ameris, and earned a jury verdict in California.  *See, e.g.*, Compl. ¶ 30.

6

**D.    Ameris Sues Byrne for Failing to Indemnify Ameris as Required by the SPA, and Byrne Files This Retaliatory Action.**

Despite agreeing in the SPA to indemnify Ameris for the MHT Litigation and independently agreeing to indemnify Ameris in November 2023, Byrne has never indemnified Ameris for over $1.8 million in losses relating to the MHT Litigation. *See supra* pp.4–5.

Under the SPA, Byrne agreed that "the state and federal courts located in the State of Delaware shall have exclusive jurisdiction to hear and determine" "[a]ny dispute submitted to litigation" relating to the indemnification provision. Ex. 1 § 8.4(c). Accordingly, in May 2025, with Byrne having shirked his indemnification obligation, Ameris filed a lawsuit against Byrne in the Delaware Superior Court to enforce the SPA indemnification provision. *See* Compl. ¶ 35.

After default judgment was entered against Byrne for failure to respond in the Superior Court action, Byrne moved to vacate the default judgment and dismiss the litigation based on venue grounds, relying on a separate provision of the SPA allowing for jurisdiction in the District of Delaware and the Delaware Court of Chancery. *See id.* ¶ 36; *see also* Ex. 1 § 10.8. Ameris then voluntarily dismissed the Superior Court action and refiled its claims for breach of the indemnification provision in this Court. *See* Compl. ¶ 36; *Ameris Bank v. Byrne*, No. 26-cv-190 (D. Del.). Byrne now sues Ameris for breach of the SPA for originally filing its indemnification lawsuit in a Delaware court, as expressly authorized by Section 8.4(c). *See* Compl. ¶ 37.

Byrne also claims that his indemnification obligation should be voided based on Ameris's purported fraud related to the LTIP. *See id.* ¶¶ 7, 33, 49, 62, 75. Byrne claims that Ameris's compliance with the LTIP was uniquely "critical" in his agreeing to the SPA indemnification provision in particular, *see id.* ¶¶ 3, 5, 21, 32, notwithstanding that neither the SPA nor the indemnification provision mentions the LTIP at all, let alone as a material inducement or condition of closing. In seeking at least partial rescission of the SPA, *id.* ¶¶ 7, 33, 49, Byrne notably does

7

not identify a single SPA provision other than the indemnification provision that is supposedly invalid based on Ameris's alleged misconduct relating to the LTIP.  Of course, it is the indemnification provision through which Byrne would otherwise owe Ameris over $1.8 million.

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court may consider "the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference."  *Device Enhancement LLC v. Amazon.com., Inc.*, 189 F. Supp. 3d 392, 395 (D. Del. 2016).

Fraud claims are subject to heightened pleading requirements, including that "the circumstances constituting fraud . . . be stated with particularity."  Fed. R. Civ. P. 9(b).  Under that standard, "the complaint must describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023).  "Complaints that fail to plead fraud or false claims grounded in fraud with the requisite particularity are dismissed in the same manner as a dismissal under [R]ule 12(b)(6)." *MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*, 411 F. Supp. 3d 316, 331 (D. Del. 2019).

## I.    PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUDULENT INDUCEMENT.

"Under Delaware law, the elements of fraudulent inducement and fraud are the same": "(1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the

8

plaintiff as a result of such reliance." *Vatidis v. Trimble, Inc.*, 2019 WL 3546693, at \*2 (D. Del. Aug. 5, 2019). Plaintiffs' claim for fraudulent inducement strains to fit a square peg into a round hole. Plaintiffs seek to rescind the SPA despite the fact that Plaintiffs expressly disclaimed any representations outside the four corners of the SPA when entering into that agreement and have not identified a single alleged misstatement relating to the SPA. Any purported representations by Ameris relating to its intent to comply with the *LTIP* after closing cannot possibly give rise to a claim for fraudulent inducement of the *SPA*. At most, Plaintiffs attempt to bootstrap a claim for breach of the LTIP—which Byrne is litigating in California—into one for fraudulent inducement of a completely separate contract. Delaware law prohibits such gamesmanship.

### A.    Plaintiffs' Fraud Claim Is a Bootstrapped Claim for Breach of Contract.

Byrne's Complaint rehashes the same claim for breach of the LTIP that Byrne is litigating in California against Ameris. This is classic bootstrapping and does not state a claim for fraud.

It is well-settled that "one cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations." *Iotex Commc'ns, Inc. v. Defries*, 1998 WL 914265, at \*4 (Del. Ch. Dec. 21, 1998). Indeed, a claim for breach of contract—which is exactly what Byrne has asserted relating to the LTIP, and is litigating in California—"cannot be 'bootstrapped' into a fraud claim merely by adding the words 'fraudulently induced' or alleging that the contracting parties never intended to perform." *Id.* at \*5; *see also PureShares, LLC v. Zimnisky*, 2025 WL 606903, at \*6 (D. Del. Feb. 25, 2025) ("Delaware courts will not permit a plaintiff to bootstrap a breach of contract claim into a tort claim merely by intoning the prima facie elements of the tort while telling the story of the defendant's failure to perform under the contract."); *Cornell Glasgow, LLC v. La Grange Props. LLC*, 2012 WL 2106945, at \*8 (Del. Super. June 6, 2012) (same); *Tristate Courier & Carriage,*

*Inc. v. Berryman*, 2004 WL 835886, at *11 (Del. Ch. Apr. 15, 2004) (same).  This Court regularly dismisses such claims on the pleadings.  *See, e.g.*, *Cheffers v. Ideagen Software Inc.*, 2025 WL 2549411, at *7 (D. Del. Sept. 4, 2025) ("[t]he 'bootstrapping doctrine' under Delaware law bars a common law fraud claim that is duplicative of a related breach of contract claim"); *PureShares*, 2025 WL 606903, at *8 (dismissing fraud claim when plaintiffs "only told 'the story of . . . [D]efendant's failure to perform under the contract' in their Complaint").

*Cheffers* is directly on point.  There, the plaintiff founded a data analytics company that was later acquired by the defendant and restructured into a wholly-owned subsidiary of the defendant.  A dispute emerged concerning the defendant's calculation and payment of "earnout payments" due to the plaintiff under the merger agreement.  *See Cheffers*, 2025 WL 2549411, at *1–4.  The plaintiff alleged that the defendant committed fraud in depriving him and other employees of $5 million supposedly owed under the earnout provisions.  *Id.* at *5.  The defendant moved to dismiss, arguing that the alleged misstatements merely duplicated contractual obligations purportedly owed to the plaintiff under the merger agreement.  *Id.* at *7.

This Court agreed, holding that the "fraud claim[s] [were] based entirely on a breach of the Agreement, not a violation of an independent duty imposed by law, and [were] improperly bootstrapped to [the] breach of contract claim[s]."  *Id.* at *8.  In particular, the plaintiff challenged representations that defendant would comply with the parties' agreement in the future when calculating any earnout payment.  *See id.* at *7.  In other words, the alleged misrepresentations amounted to breach of the agreement at issue, dooming the fraud claim.  *Id.* ("[a] tort claim cannot be based solely on a violation of a contractual duty").  Even if the plaintiff's fraud claim were viewed as attacking purported omissions, namely, that the defendant never "intended" to abide by the earnout payment formulas, that theory also failed.  As the Court recognized, "a fraud claim can

10

survive a motion to dismiss only when the allegations of fraud do not rely solely on the intent not to perform obligations imposed by an agreement." *Id.*; *see also Cornell*, 2012 WL 2106945, at *8 (dismissing fraud claim when allegations "relate[d] to the defendants' failed performance" under agreement and finding that "even if the defendants never intended to perform, their alleged scheme to breach the [agreement] simply cannot give rise to an actionable claim for fraud").

The same is true here. No matter how Byrne attempts to slice it, he is plainly claiming fraud based on the same alleged conduct giving rise to his separate claim for breach of the LTIP. That is an improperly bootstrapped claim that should be dismissed as a matter of law.

**B.      Plaintiffs Claim Fraudulent Inducement of the SPA Without Identifying a Single Alleged Misrepresentation Concerning that Agreement.**

Byrne's fraudulent inducement claim suffers yet more defects. Byrne baldly asserts that he was fraudulently induced to enter into the SPA, yet does not identify a single allegedly fraudulent statement made by Ameris regarding the contract he seeks to rescind—the SPA. Rather, all of the alleged misrepresentations challenged by Byrne relate solely to Ameris's calculation of proceeds allegedly owed to Byrne under the LTIP, not the SPA. *See, e.g.*, Compl. ¶¶ 5, 20, 24, 30. Byrne should not be allowed to claim fraud in the inducement of the SPA without identifying a single misrepresentation relating to that contract. *See Black Horse Cap., LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926, at *25 (Del. Ch. Sept. 30, 2014) (courts should be allowed to "bar a claim" for fraud asserting that, "as consideration for [entering into a merger]," defendants had made promises regarding a separate transaction to take place "at some point after the Merger, even though the parties did not mention that promise in the written and integrated [merger agreement]").

**C.      Plaintiffs' Claim for Fraudulent Inducement of the SPA Is Barred by the Plain Language of that Agreement.**

Nor may Byrne rely on statements extraneous to the SPA in pursuing a claim for fraudulent inducement of the SPA.  Byrne explicitly warranted in the SPA that any other understanding between the parties, oral or written, that pertained to the SPA was superseded by the written terms of the SPA.  *See* Ex. 1 § 10.5.  Byrne further agreed that he and his counsel "contributed to [the SPA's] drafting."  *Id.* § 10.16(g).  And Byrne has confirmed that the SPA was drafted by sophisticated parties negotiating at arms' length and could not be challenged by *Ameris* as improper.  *See, e.g.*, Ex. 2 at 2, 10.  These admissions belie any claim for fraudulent inducement.

Byrne cannot justifiably rely on extracontractual statements extinguished by the SPA's integration clause.  *See Evans v. Cantor Ins. Grp., LP*, 2022 WL 3908005, at *6 (D. Del. Aug. 30, 2022) (dismissing claim when plaintiff failed to plead "how he could justifiably rely upon [extracontractual] representation[s] given the Side Letter Agreement's integration clause"); *Black Horse Cap.*, 2014 WL 5025926, at *22 (no justifiable reliance "in the face of clear contractual language in which Plaintiffs agreed there were no prior agreements or understandings").

*Shareholder Representative Services LLC v. Albertsons Cos.*, 2021 WL 2311455 (Del. Ch. June 7, 2021), is instructive.  There, shareholders of a company acquired by Albertsons claimed that the company was fraudulently induced to enter into the merger agreement with Albertsons based on various oral representations made by Albertsons prior to closing regarding the operation of the company post-closing and payment of earnout consideration.  The court dismissed the plaintiff's fraudulent inducement claim for lack of justifiable reliance, holding that the integration clause of the merger agreement barred any claim for fraudulent inducement.  *Id.* at *11–12.

As the court recognized, "Delaware courts have found a lack of justifiable reliance at the pleading stage when the dispute involves alleged prior misrepresentations or omissions that run

12

expressly counter to the terms of a fully integrated contract." *Id.* at \*11. There, as here, the parties' agreement contained an integration clause providing that the merger agreement constituted the "entire agreement" between the parties and superseded all prior agreements and understandings. *Id.*; Ex. 1 § 10.5. And there, as here, "[t]he gravamen of [the plaintiff's] fraudulent inducement claim was that [the defendant] lied about its 'future intent' with respect to the operation of the business post-closing." 2021 WL 2311455, at \*12; *see, e.g.*, Compl. ¶ 5. The court held that the fraudulent inducement claim failed because "an integration clause alone is sufficient to bar a fraud claim based on expressions of future intent or future promises." 2021 WL 2311455, at \*12. It was of no moment that the agreement did not also contain "anti-reliance language explicitly providing 'that a party is not relying on any extra-contractual representations'"; because the claim was "based on expressions of future intent or future promises," the integration clause sufficed. *Id.*

The reasoning of *Albertsons* applies with equal force here. Any extracontractual representations by Ameris relating to its intent to comply with the LTIP in the future ultimately are irrelevant and cannot give rise to a claim for fraudulent inducement of the SPA. The integration clause bars such a claim. *See Talkdesk, Inc. v. DM Trans, LLC*, 2024 WL 2799307, at \*9–11 (Del. Super. May 31, 2024) (dismissing fraudulent inducement claim based on integration clause even though "the integration clause lack[ed] anti-reliance language that explicitly provide[d] that a party [wa]s not relying on any extracontractual relations" because "essence" of claim was "based on future performance, and the integration clause prevent[ed] the Court from finding justifiable reliance"); *Black Horse Cap.*, 2014 WL 5025926, at \*25 ("Entertaining a claim that so plainly conflicts with the language of th[e] [contracts] would render the integration clauses contained in them mere surplusage—a result that our canons of contractual interpretation strongly discourage."); *cf. Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 50 (Del. Ch.

13

2015) (parties "cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those other representations' fraudulent inducement claim").

### D.    Plaintiffs Fail to Allege Fraud Based on Representations Concerning Ameris's Intent to Comply with the LTIP in the Future.

Byrne exclusively challenges purported misrepresentations concerning Ameris's future compliance with the LTIP. *See, e.g.*, Compl. ¶ 5. This is a claim sounding in "promissory fraud," *i.e.*, "allegations of fraud when the underlying utterances take the form of unfulfilled promises of future performance," which is regarded with "particular disfavor." *Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, at *9 (Del. Ch. Dec. 28, 2008). For that reason, "[t]he failure to fulfill a promise to perform future acts is not ground for a fraud action unless there existed an intent not to perform at the time the promise was made." *Cato Cap. LLC v. Hemispherx Biopharma, Inc.*, 70 F. Supp. 3d 607, 627 (D. Del. 2014) (distinguishing "promissory statements as to what will be done in the future," which permit only claims for breach of contract, and "false representations of fact," which can give rise to fraudulent inducement claims). Indeed, a plaintiff "cannot make out a fraudulent inducement claim simply by showing that the defendants breached a promise to perform and alleging that the defendant never intended to perform at the time of its promise." *vMedex, Inc. v. TDS Operating, Inc.*, 2020 WL 4925512, at *11 (D. Del. Aug. 21, 2020). But that is exactly what Byrne asserts here. The Complaint leaves no doubt as to his theory: "Ameris never intended to honor the LTIP . . . ." Compl. ¶ 3; *id.* ¶¶ 27, 30, 41.

Byrne could only possibly assert a claim for fraudulent inducement on these grounds if the Complaint "allege[d] particularized facts that allow the Court to infer that, at the time the promise was made, the speaker had no intention of keeping it." *Sapp v. Indus. Action Servs., LLC*, 2024 WL 3444633, at *4 (D. Del. July 17, 2023). The Complaint lacks any such particularized

14

allegations showing that Ameris contemporaneously knew at the time of the purported representations *in 2021* that it would not "comply" with the LTIP *in the future*. Rather, Byrne points only to purported activity post-dating the SPA—namely, Ameris's supposed failure to calculate LTIP proceeds as he desired over a year after execution of the SPA—as evidencing Ameris's knowledge as of the time of SPA execution. *See* Compl. ¶¶ 23–30. Allegations of "fraud by hindsight" do not state a claim. *See, e.g.*, *Sapp*, 2024 WL 3444633, at *5 (complaint was "devoid of allegations regarding [defendant's] intent at the time the representation was made" and "only mention[ed]" defendants' activity "after the APA's execution").[5]

### E.    Plaintiffs Are Not Entitled to Rescission or Reformation of the SPA.

"[R]escission is an extreme remedy and should only be granted . . . when it is 'clearly warranted.'" *In re Tesla, Inc. Derivative Litig.*, 2025 WL 3689114, at *12 (Del. Dec. 19, 2025). To obtain rescission, "the *status quo ante* of the plaintiff and of the defendant as well must be restored"; if that cannot be "substantially accomplished," rescission "will be denied." *Kostyszyn v. Martuscelli*, 2014 WL 3510676, at *5 (Del. Ch. July 14, 2014). Nowhere do Plaintiffs allege that they are "ready, willing and able to return [Ameris] to the *status quo ante*" in the event of rescission, which would include their repayment of the more than $186 million they received under the SPA. *See id.* Their claim should be dismissed for that reason alone. *See Winters v. Patel*, 154 F. App'x 294, 297–98 (3d Cir. 2005) (party waives claim for fraudulent inducement when it fails "to tender back the consideration [it] received under that agreement"); *Allied Erecting &*

---

[5] *Monica v. Delta Data Software, Inc.*, 2026 WL 370756, at *11 (Del. Super. Feb. 10, 2026) (failure to "plead specific facts from which it would be inferred that, at the time the promise was made, [defendants] had no intention of keeping it"); *T. Gray Util. & Rehab Co. v. Mack Operations, LLC*, 2026 WL 84231, at *2 (Del. Ch. Jan. 12, 2026) (failure "to plead particularized facts showing the defendants had no intention of performing the contractual promise at issue . . . when the [contract] was signed"); *Dunn v. FastMed Urgent Care, P.C.*, 2019 WL 4131010, at *10 (Del. Ch. Aug. 30, 2019) (no "specific facts" relating to defendants' intent "at the time of their promises").

*Dismantling Co. v. USX Corp.*, 249 F.3d 191, 199 (3d Cir. 2001) ("once fraudulent inducement is alleged the party must either return the consideration or abandon the claim").

Nor can Byrne simultaneously seek rescission of the SPA and pursue a claim for breach of the SPA as he attempts here. Under Delaware law, "a party who discovers that he has been misled into entering a contract by fraud must act with reasonable diligence if he seeks rescission rather than affirming the contract and suing for damages." *Kostyszyn*, 2014 WL 3510676, at *5. Byrne asks the Court both to rescind the SPA and to award him damages for Ameris's purported breach of Section 10.8 of the SPA. *See* Compl. ¶¶ 47, 60, 73, 80; *id.*, Prayer for Relief (a), (d). Byrne cannot have it both ways, and his mutually exclusive claims for relief should be dismissed.

Reformation is also unavailable. The SPA reflects no connection between Byrne's indemnification obligations and Ameris's alleged LTIP commitments. Nor does Byrne allege an agreement on the part of *Ameris* linking the two, referring only to his own motivations. *See id.* ¶ 5. Without such an agreement, there is no basis for reformation. *See Interim Healthcare, Inc. v. Sherion Corp.*, 2003 WL 22902879, at *7 (Del. Ch. Nov. 19, 2003) ("Reformation requires an antecedent agreement, which the written instrument attempts to express.").

### F.   Plaintiffs' Alternative Claims for "Equitable Fraud" Likewise Fail.

Because Plaintiffs fail to plead fraudulent inducement with the requisite particularity, their equitable fraud claims pled in the alternative fail for the same reason. *See Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *9 (Del. Ch. Jan. 30, 2015). The equitable fraud claims fail for other reasons as well. "[A]n equitable fraud . . . claim lies only if there is either: (i) a special relationship between the parties over which equity takes jurisdiction (like a fiduciary relationship) or (ii) justification for a remedy that only equity can afford." *Id.* Neither exists here. Plaintiffs fail to allege "any type of special relationship with [Ameris] that would support a claim."

16

*Univ. Enter. Grp., L.P. v. Duncan Petroleum Corp.*, 2013 WL 3353743, at *17 (Del. Ch. July 1, 2013). To the contrary, "the gravamen of the present dispute arises from a transaction that ostensibly was the product of arms-length negotiation between sophisticated parties," *Fortis*, 2015 WL 401371, at *9, which Plaintiffs have admitted, *see supra* p.5. Their request for "damages," *see* Compl. ¶¶ 61, 74, 80, also confirms that equitable relief is not warranted. *See Paul Elton, LLC v. Rommel Del., LLC*, 2020 WL 2203708, at *12 (Del. Ch. May 7, 2020) (plaintiff could "seek an adequate remedy at law through its claims for breach of contract").

## II.  BYRNE IS CURRENTLY LITIGATING THE CHALLENGED LTIP IN CALIFORNIA AND CANNOT SPLIT HIS LTIP CLAIMS.

Byrne has improperly split his claims related to the LTIP in two forums. In California, Byrne asserted a claim for breach of the LTIP on the exact same theory presented by Plaintiffs in this case. *Compare* Compl. ¶¶ 3, 18, 23, 30, 41, *with* Ex. 4 ¶¶ 47–54. He has prevailed in a jury trial on that claim, with post-trial briefing ongoing. *See* Ex. 5 at 5–7. Byrne should not be allowed to pursue further LTIP-related claims in Delaware based on the same underlying dispute.

Delaware's rule against claim splitting is designed to "prevent burdening the same defendant with duplicative proceedings in different courts brought by the same plaintiff based on different causes of action arising out of a common underlying nucleus of facts." *Goureau v. Lemonis*, 2021 WL 1197531, at *8 (Del. Ch. Mar. 30, 2021). Here, Byrne is not suing over merely a common nucleus of facts; the nucleus of facts here and in California is *identical*. Plaintiffs' fraudulent inducement claims should be dismissed. *See Daughtery v. Dondero*, 2023 WL 461112, at *7 (Del. Ch. Jan. 27, 2023) (dismissal for improper claim splitting).[6]

---

[6] Given that Byrne has brought claims related to the LTIP in two forums, this second lawsuit should also be dismissed under the first-filed rule. *See Bos. Sci. Corp. v. Wall Cardiovascular Techs., LLC*, 647 F. Supp. 2d 358, 368 n.12 (D. Del. 2009) ("[W]here proceedings involving the same (continued…)

17

### III.   PLAINTIFFS SHOULD BE ESTOPPED FROM CLAIMING THAT THE SPA WAS FRAUDULENTLY INDUCED.

Byrne has asserted ever-evolving positions on the SPA.  When it serves his interests, Byrne admits that the SPA is a binding agreement negotiated at arms' length between sophisticated parties represented by counsel.  *See* Ex. 2 at 2, 10.  Now Byrne argues the exact opposite, claiming that the same SPA is unenforceable.  Byrne should be held to his prior litigation positions and precluded from pursuing claims in this forum predicated on an entirely different view of the SPA.

"The basic principle of judicial estoppel . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."  *In re Dex Media, Inc.*, 595 B.R. 19, 36 (D. Del. 2018).  A party is judicially estopped if (1) he has taken two positions that are irreconcilably inconsistent, (2) he changed his position in bad faith (*i.e.*, with intent to play "fast and loose" with the courts), and (3) there is no lesser sanction that will adequately remedy the damage done by his misconduct.  *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003).  Each factor compels dismissal of Byrne's claims.

Byrne's positions on the SPA are diametrically opposed; it is apparent that his position on the SPA in this lawsuit is intended to shirk his indemnification obligation; and his vexatious fraud claims should be dismissed.[7]  *See Yetter v. Wise Power Sys., Inc.*, 929 F. Supp. 2d 329, 331 (D. Del. 2013) (dismissal due to "completely inconsistent" legal positions); *Haines & Kibblehouse,*

---

parties and issues are pending simultaneously in different federal courts, the first to file rule requires the dismissal of the second-filed suit absent exceptional circumstances.").

[7] This is the same obligation Byrne acknowledged in November 2023 as his "contractual obligation regarding MHT in the stock purchase agreement," almost a year after he allegedly learned that "Ameris never intended to honor the LTIP"—his stated basis for invalidating the SPA.  Compl. ¶¶ 3, 23, 24; *supra* p.5.  This is also months after he allegedly complained to Ameris that it was miscalculating LTIP proceeds, *see* Compl. ¶ 25, which Byrne again claims invalidates the SPA.

*Inc. v. Balfour Beatty Constr., Inc.*, 789 F. Supp. 2d 622, 631–36 (E.D. Pa. 2011) (dismissing lawsuit based on earlier admissions); *AFN, Inc. v. Schlott, Inc.*, 798 F. Supp. 219, 227 (D.N.J. 1992) (estopping defendant from challenging legality of agreement after taking "diametrically opposed positions" on agreement's validity in different courts while "[e]mbroiled in simultaneous litigation over the same subject matter with the same adversary").

Byrne's conduct is incompatible with his theory of fraud. Byrne ratified the SPA by suing for breach, in addition to acknowledging his indemnification obligations and independently agreeing to indemnify Ameris in November 2023. Under the doctrine of ratification, "a promise can be enforced even though the underlying contract is voidable if it is ratified by the promisor." *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 782 (3d Cir. 2007). As applied to fraud, "[o]ne who has been induced by fraud to enter into a contract may either rescind the contract and recover what he has parted with or affirm the contract and sue for damages caused by the fraud. He cannot do both, because the two remedies are inconsistent and mutually exclusive." *Am. Life Ins. Co. v. Parra*, 187 F. Supp. 2d 203, 210 (D. Del. 2002). Here, Byrne alleges that the SPA was procured through fraud and should be rescinded, while affirming the SPA and suing for breach. Byrne may not pursue these inconsistent theories. *See Winters*, 154 F. App'x at 297 ("Once [plaintiff] affirmed the [contract], she lost her ability to rescind."); *Parra*, 187 F. Supp. 2d at 213 ("the law mandates that a party asserting fraudulent inducement may either choose to rescind the contract or affirm the contract and pursue damages"); *Am. Elec. Labs., Inc. v. Dopp*, 334 F. Supp. 339, 342 (D. Del. 1971) ("It is well-settled that a party may waive his right to disaffirm or rescind a contract based on fraud by taking action with respect to the contract after discovering the fraud or learning of facts and circumstances from which such knowledge could be imputed to him.").

19

**IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT BASED ON AMERIS'S DELAWARE SUPERIOR COURT LAWSUIT.**

While decrying the SPA as infected by fraud, Byrne affirmatively relies on the SPA and claims that Ameris breached Section 10.8 by originally filing its indemnification lawsuit in the Delaware Superior Court, rather than this Court or the Delaware Court of Chancery.  However, Byrne agreed under the SPA that "the state and federal courts located in the State of Delaware shall have exclusive jurisdiction to hear and determine" "[a]ny dispute submitted to litigation" relating to the indemnification provision.  Ex. 1 § 8.4(c).  This would naturally include the Delaware Superior Court.  Byrne thus has failed to allege any breach of the SPA.

Nor has Byrne alleged any redressable harm.  Ameris has since dismissed the Superior Court action and filed its indemnification claims in Byrne's desired forum.  *See* Compl. ¶ 36.  His breach of contract claim therefore is moot.  *See RGC Int'l Invs., LDC v. Ari Network Servs., Inc.*, 2004 WL 189784, at *5 (D. Del. Jan. 22, 2004) (dismissing claim for breach of forum selection clause when action was transferred to forum designated by contract).  To the extent Byrne seeks as damages his costs incurred in moving to vacate the default judgment entered against him in the Superior Court action or failing to timely remove the case to federal court, those are consequences of his own making, and he has not alleged any efforts to mitigate such damages.  *See VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 294 (3d Cir. 2014) ("a party may not generally recover damages for losses that it could have avoided by reasonable efforts").

## CONCLUSION

Ameris respectfully requests that the Court dismiss the Complaint with prejudice.[8]

---

[8] No amendment could cure the fatal defects in Byrne's theory of fraud or unwind the preclusive effects of his separate litigation in California and his prior concessions.  Any further leave to amend should be denied.  *See Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988).

*Of Counsel*:

Benjamin J. Razi
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
brazi@cov.com

Robert C. Gianchetti
**COVINGTON & BURLING LLP**
30 Hudson Yards
New York, NY 10001
(212) 841-1000
rgianchetti@cov.com


Dated: July 23, 2026

**SMITH, KATZENSTEIN & JENKINS LLP**

By: /s/ *Megan Ix Brison*
Elizabeth Wilburn Joyce (DE Bar #3666)
Megan Ix Brison (DE Bar #6721)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
ewj@skjlaw.com
mib@skjlaw.com

*Attorneys for Defendant Ameris Bank*

21